Y. David Scharf
Gayle Pollack
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600
dscharf@morrisoncohen.com
gpollack@morrisoncohen.com
*Attorneys for Defendants 72 Berry Street, L.L.C.,*
*72 Berry Street Holdings, L.L.C., Meshberg*
*Martin, LLC, Matthew Landau, Justin Meshberg,*
*and David Martin*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BOARD OF MANAGERS OF THE MASON FISK CONDOMINIUM, FOR ITSELF AND AS STATUTORY AGENT OF THE UNIT OWNERS OF THE MASON FISK CONDOMINIUM,<br><br>Plaintiff,<br><br>-against-<br><br>72 BERRY STREET, L.L.C., 72 BERRY STREET HOLDINGS, L.L.C., MESHBERG MARTIN, LLC, MATTHEW LANDAU, JUSTIN MESHBERG, DAVID MARTIN, THE CORCORAN GROUP INC. d/b/a THE CORCORAN GROUP REAL ESTATE, JOHN J. NATOLI CONSULTING ENGINEERS, and JOHN J. NATOLI,<br><br>Defendants. | Case No. Civ. 10-5782<br>(Cogan, J.) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT BY DEFENDANTS 72 BERRY STREET, L.L.C.,
72 BERRY STREET HOLDINGS, L.L.C., MESHBERG MARTIN, LLC,
MATTHEW LANDAU, JUSTIN MESHBERG, AND DAVID MARTIN**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    A.    Sponsor Sells Units To Individual Purchasers
            Pursuant To An Offering Plan ..................................................................... 2

    B.    The Building Obtains A Temporary Certificate of
            Occupancy, And Purchasers Move Into Apartments
            And Discover Purported Design And Construction Defects ...................... 3

    C.    Sponsor Files Suit Against The Building ..................................................... 4

ARGUMENT .................................................................................................................... 5

    I.    PLAINTIFF'S ILSA CLAIM SHOULD BE DISMISSED ........................ 5

            A.    Plaintiff Lacks Standing To Bring An ILSA Claim ........................ 5

            B.    The ILSA Claim Is Legally Insufficient Because
                 It Does Not Allege A Statement That Was False
                 When Made Or Purchasers' Reliance ............................................. 8

            C.    Plaintiff's Failure to Name Required Parties
                 Requires Dismissal Of This Action ............................................... 11

    II.    THE COURT SHOULD STAY THIS ACTION IN
            FAVOR OF THE EXISTING STATE COURT ACTION ...................... 12

    III.    THIS COURT SHOULD NOT EXERCISE SUPPLEMENTAL
            JURISDICTION OVER PLAINTIFF'S STATE LAWS CLAIMS ......... 14

    IV.    THE BREACH OF CONTRACT CLAIMS AGAINST ALL
            SPONSOR DEFENDANTS BUT SPONSOR FAIL BECAUSE
            THERE ARE NO CONTRACTS BETWEEN PLAINTIFF AND
            THOSE DEFENDANTS ........................................................................ 15

    V.    PLAINTIFF'S NEGLIGENT MISREPRESENTATION
            AND NEGLIGENCE CLAIMS ARE BARRED ..................................... 16

            A.    Plaintiff's Tort Claims Are Barred By The Martin Act ................. 17

B.     Plaintiff Has Not Alleged Any "Special Relationship" With
       Sponsor Defendants To Support Negligence And
       Negligent Misrepresentation Claims ..............................................20

C.     The Negligence and Negligent Misrepresentation Claims
       Must Be Dismissed As Duplicative Of The Breach Of
       Contract Claims ..............................................................................21

VI.    BECAUSE PLAINTIFF HAS NOT ALLEGED MESHBERG
       MARTIN OR 72 HOLDINGS PARTICIPATED IN ANY
       WAY IN THE SALES PROCESS, ALL CLAIMS AGAINST
       THEM SHOULD BE DISMISSED...........................................................23

V.     THIS COURT SHOULD NOT GRANT PLAINTIFF
       LEAVE TO AMEND A SECOND TIME..................................................24

CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Agape Litigation*, 681 F. Supp. 2d 352, 359 (E.D.N.Y. 2010) ............................................20

*Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010) ...............................................................15

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) ..........................................17

*Chase Manhattan Bank, N.A. v. Remington Products*,
     865 F. Supp. 194 (S.D.N.Y. 1994), *aff'd*, 71 F.3d 407 (2d Cir. 1995) ................22

*Colorado River Water Conservation District v. United States*,
     424 U.S. 800, 47 L. Ed. 2d 483 (1976) .................................................12

*De Asis v. New York City Police Department*,
     No. 08 cv 4597, 2009 U.S. App. LEXIS 24254 (2d Cir. Nov. 5, 2009) .............24

*De Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989) .................................................................12

*Dongelewicz v. First Eastern Bank*, 80 F. Supp. 2d 339 (M.D. Pa. 1999) ....................................8

*Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283 (S.D. Fla. 2007) ................................8

*Giordano v. City of New York*, 274 F.3d 740 (2d Cir. 2001) ......................................................15

*Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) ...........................................20

*Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 544 (S.D.N.Y. 2007) ...................9

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 332, 53 L. Ed. 2d 59 (1977) .....6

*Jetter v. Knothe Corp.*, 324 F.3d 73 (2d Cir. 2003) ....................................................................15

*MCI WorldCom Commc'ns, Inc. v. N. America Comm'ns Control, Inc.*,
     No. 98 Civ. 6818, 2003 U.S. Dist. LEXIS 9212 (S.D.N.Y. June 4, 2003) ...........9

*Moran v. Crystal Beach Capital, LLC*,
     No. 8:10-cv-1037, 2011 U.S. Dist. LEXIS 569 (M.D. Fla. Jan. 4, 2011) .............8

*Prebil v. Pinehurst, Inc.*, 638 F. Supp. 1314 (D. Mont. 1986) .....................................................9

*Rambaran v. Park Square Enters.*,
     No. 08-cv-247, 2008 U.S. Dist. LEXIS 71538 (M.D. Fla. Sept. 22, 2008) .........13

*Revak v. SEC Realty Corp.*, 18 F.3d 81 (2d Cir. 1994) ...............................................................17

*Solomon v. Pendaries Props., Inc.*, 623 F.2d 602 (10th Cir. 1980) ...............................................9

*State University Retirement System v. Astrazeneca PLC*,
       No. 08-3185-cv, 2009 U.S. App. LEXIS 13674 (2d Cir. Jun. 25, 2009) ...............9

*Stephenson v. Citco Group Limited*, No. 09 CV 00716,
       2010 U.S. Dist. LEXIS 32321 (S.D.N.Y. April 1, 2010) ......................................18

*Terre Du Lac Association, Inc. v. Terre Du Lac, Inc.*,
       772 F.2d 467 (8th Cir. 1985) *cert. denied*, 475 U.S. 1082 (1986) .........................6

*Waterville Investment, Inc. v. Homeland Security Network, Inc.*,
       No. 08 CV 3433, 2010 U.S. Dist. LEXIS 66367 (E.D.N.Y. July 2, 2010) ..........22

*Weaver v. Opera Tower, LLC*, No. 07-23333, 2008 U.S. Dist. LEXIS 91294
       (S.D. Fla. Aug. 1, 2008) ...............................................................................8, 19

*Woodsmoke Ranch Association v. Woodsmoke Resorts, Inc.*, No. 90 c6975,
       1991 U.S. Dist. LEXIS 5689 (N.D. Ill. May 1, 1991) ...........................................6

## STATE CASES

*15 East 11th Apt. Corp. v. Elghanayan*, 220 A.D.2d 295,
       632 N.Y.S.2d 119 (1st Dept 1995) .....................................................................17

*Aris Multi- Strategy Offshore Fund v. Devaney*, 26 Misc.3d 1221
       [907 N.Y.S.2d 98 (Sup. Ct. N.Y. Cty. 2009) ......................................................18

*Board of Mgrs. of 374 Manhattan Avenue Condominium v. Harlem Infil LLC*,
       Index No. 105826/08, 2010 N.Y. Misc. LEXIS 2211
       (Sup. Ct. N.Y. Cty. Jun. 18, 2010) ....................................................................20

*Board of Mgrs. of Acorn Ponds at North Hills Condominium I v. Long Pond Investors*,
       233 A.D.2d 472, 650 N.Y.S.2d 987 (2d Dept 1996) ............................................20

*Board of Mgrs. of the Arches at Cobble Hill Condominium v. Hicks & Warren LLC*,
       Index No. 19643, 2007 NY   (Sup. Ct. Kings Cty. Feb. 20, 2007) ......................16

*Bridge St. Homeowners Association v. Brick Condominium Developments, LLC*,
       18 Misc. 3d 1128A, 856 N.Y.S.2d 496 (Sup. Ct. Kings Cty. 2008) ..............19, 23

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987) .......22

*CRT Investments, Ltd. v. Merkin*, Index No. 601052/09, 29 Misc. 3d 1218A,
       2010 N.Y. Misc. LEXIS 5282 (Sup. Ct. N.Y. Cty. May 9, 2010) ........................18

*Fresh Direct, LLC v. Blue Martini Software, Inc.*, 7 A.D.3d 487, 776 N.Y.S.2d 301
    (2nd Dept 2004) ...............................................................................................20

*Hamlet on Olde Oyster Bay Home Owners Association, Inc. v. Holiday Organization, Inc.,*
    65 A.D.3d 1284, 887 N.Y.S.2d 125 (2d Dept 2009) .......................................18, 23

*Horn v. 440 E. 57th Co.*, 151 A.D.2d 112, 547 N.Y.S.2d 1 (1st Dept 1989) ..............................18

*Kerusa Co. LLC v. W10Z/515 Real Estate Limited Partnership,*
    12 N.Y.3d 236, 879 N.Y.S.2d 17 (2009) .......................................................17, 19

*Kimmell v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 715 (1996) ..................................................20

*Koatz v. 1776 Second Avenue Associates,*
    244 A.D.2d 201, 664 N.Y.S.2d 32 (2d Dept 1997) ...............................................11

*Mandracchia v. 901 Stewart Partners, LLC,* Index No. 14488/08, 2009 N.Y. Misc.
    LEXIS 4455 (Sup. Ct. Nassau Cty. Dec. 10, 2009) .......................................16, 19

*Merin v. Precinct Developers LLC*, 74 A.D.3d 688, 902 N.Y.S.2d 821 (1st Dept 2010) ...........18

*Oko v. Walsh*, 28 A.D.3d 529, 814 N.Y.S.2d 655 (2d Dept 2006) ..............................................19

*Old Republic National Title Insurance Company v. Cardinal Abstract Corp.,*
    14 A.D.3d 678, 790 N.Y.S.2d 143 (2d Dept 2005) ...............................................23

*Rego Park Gardens Owners, Inc. v. Rego Park Gardens Associates,*
    191 A.D.2d 621, 595 N.Y.S.2d 492 (2nd Dept 1993) ...........................................18

*Thompson v. Parkchester Apts. Co.,*
    249 A.D.2d 68, 670 N.Y.S.2d 858 (1st Dept 1998) ..............................................17

*Tutora v. Siegel*, 40 A.D.3d 227, 833 N.Y.S.2d 385 (1st Dept 2007) ..........................................16

*Whitehall Tenants Corp. v. Estate of Olnick*, 213 A.D.2d 200,
    623 N.Y.S.2d 585 (1st Dept 1995) .......................................................................17

## FEDERAL STATUTES

15 U.S.C. §§ 1703(a)(2) .............................................................................................8, 9

15 U.S.C. § 1709(b) ........................................................................................................6

15 U.S.C. §1719 ............................................................................................................14

24 C.F.R. § 240.10b5-1 ...................................................................................................9

## STATE STATUTES

N.Y. Real Property Law § 339-dd ...............................................................................................5

Defendants 72 Berry Street, L.L.C. ("Sponsor"), 72 Berry Street Holdings, L.L.C. ("72 Holdings"), Meshberg Martin, LLC ("Meshberg Martin"), Matthew Landau, Justin Meshberg, and David Martin (collectively, "Sponsor Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6) to dismiss Plaintiff The Board of Directors of the Mason Fisk Condominium's ("Plaintiff" or the "Board") Amended Complaint, dated February 23, 2011 ("Amd. Compl.").

## PRELIMINARY STATEMENT

With this suit, Plaintiff attempts to elevate a simple breach of contract claim into a federal matter. Plaintiff, which claims to represent certain individual apartment purchasers in the Mason Fisk Condominium (the "Building"), alleges that Sponsor Defendants agreed to construct the Building to certain specifications, and that some aspects of the constructed Building fell short. From there, Plaintiff leaps to the conclusion that Sponsor Defendants violated the anti-fraud provisions of the Interstate Land Sale Disclosure Act ("ILSA"), and that individual unit purchasers are entitled to rescission of their purchase agreements, specific performance of repairs and remedial work in the Building, and a host of monetary damages. Plaintiff is wrong.

Critically, Plaintiff is not the correct party to bring a claim under ILSA. Indeed, one of the members of the Board has already attempted to opt out of this suit, and preserve his right to bring claims that are "personal" or "unique" to his units. While it is not clear what that Board member is reserving, the message is clear – even a Board member recognizes that Plaintiff is not appropriately situated to bring this action. Courts that have explicitly addressed the issue have held that a board of managers does not have standing to bring suit under ILSA – which grants a right of action only to "purchasers" – even in the face of State statutory authority providing general litigation authority for a board of managers. Sound reasons support this determination, including the specific language of ILSA's grant of rights, the individual issues

#2710590 v3 \019300 \0005

that must be proven for an ILSA claim, and the potential that a board will not adequately represent all unit owners' rights in a litigation. As ILSA provides the only basis for federal jurisdiction, this Court need not address the state law claims upon dismissal of the ILSA claim.

If this Court considers Plaintiff's state law claims, however, it should dismiss those claims. In part because it is the wrong party to bring suit, the remainder of Plaintiff's claims fare no better. Plaintiff's breach of contract claim against Sponsor Defendants aside from Sponsor must be dismissed because none of those defendants were parties to any contracts with Plaintiff or any apartment purchasers. Plaintiff's remaining claims against Sponsor Defendants, for negligence and negligent misrepresentation, are barred for a host of reasons, including but not limited to because the claims are premised solely on the Building's offering plan, and thus are preempted by the Martin Act, they fail to adequately allege that the Sponsor Defendants had the required special relationship or duty to Plaintiff and they are duplicative of Plaintiff's breach of contract claims (to the extent those stand).

Because Plaintiff fails to state a claim against Sponsor Defendants, aside from a bare breach of contract claim against Sponsor, Sponsor Defendants respectfully request that this Court dismiss the Amended Complaint. If the Court finds that Plaintiff states a claim under ILSA, Sponsor Defendants respectfully request that the Court nonetheless stay this action while the Sponsor's State Court action, which will include all parties required for full relief, proceeds.

## STATEMENT OF FACTS[1]

### A.     Sponsor Sells Units To Individual Purchasers Pursuant To An Offering Plan

Sponsor offered units in the Building for sale pursuant to an offering plan dated September 19, 2008, as amended (the "Offering Plan") (Amd. Compl. ¶ 17). The Offering Plan

---

[1]     The allegations of the Amended Complaint are assumed to be true only for this motion.

described renovation of a factory into a residential building with 26 units, 25 of which would be offered for sale (Amd. Compl. ¶ 18). Sponsor and others marketed the Building as "luxury, sleek, hip and environmentally-friendly loft apartments" (Amd. Compl. ¶ 22). When each purchaser ("Purchaser") entered into a purchase agreement for an apartment (a "Purchase Agreement"), the Building's construction was not yet complete (Amd. Compl. ¶ 26).

The Purchase Agreements incorporate the Offering Plan (Amd. Compl. ¶ 27). The Offering Plan represents, among other things, that Sponsor will complete construction of the Building substantially in accordance with the Offering Plan, using materials of a substantially similar or better quality or design than described in the plan, and according to applicable codes and filed plans (Amd. Compl. ¶ 27). Sponsor Defendants signed a certification in the Offering Plan stating that the plan was complete and accurate (Amd. Compl. ¶ 31).

**B.    The Building Obtains A Temporary Certificate Of Occupancy, And Purchasers Move Into Apartments And Discover Purported Design And Construction Defects**

On September 2, 2009, the New York City Department of Buildings issued a temporary certificate of occupancy ("TCO") for the Building (Amd. Compl. ¶ 40). Soon after, Purchasers began closing on apartments and moving into the Building (Amd. Compl. ¶ 41).

After taking possession of their apartments, Purchasers allegedly discovered that the Building and individual apartments suffered from design and construction defects (Amd. Compl. ¶ 43). As a result, Plaintiff retained Howard L. Zimmerman Architects, P.C. ("HLZA") to investigate (Amd. Compl. ¶ 44). HLZA, prepared a report detailing purported issues in the Building's design and construction, including lack of fire protection within and between units, windows of inferior quality in units, improper installation of individual unit heat pumps, improper installation of wooden floors in individual units, lack of sound insulation between apartments, and poor building ventilation (Amd. Compl. ¶ 44).

In or about October 2010, the TCO for the Building lapsed, though the Building obtained a permanent certificate of occupancy in December 2010 (Amd. Compl. ¶¶ 46, 50). Sponsor has not applied for a J-51, which is a real estate tax exemption and abatement potentially applicable to the Building, despite its representation that it would use "best efforts" to insure the Building qualified for such a benefit (Amd. Compl. ¶¶ 52, 55).

## C.   Sponsor Files Suit Against The Building

Based on complaints by individual unit owners, Sponsor agreed to perform additional work on the Building (Declaration of Gayle Pollack, dated March 9, 2011 ("Pollack Dec.") Ex. 1). Among other things, Sponsor agreed to augment firestopping in the Building, and performed work on two apartments (Pollack Dec. Ex. 1 at ¶ 72). When Plaintiff blocked Sponsor from performing additional work, despite Offering Plan provisions allowing the work to proceed, Sponsor filed suit in the New York State Supreme Court, Kings County, on November 1, 2010 (the "State Court Action") (Pollack Dec. Ex. 1 at ¶¶ 79-84). The Board joined all issues raised in this federal action by submitting HLZA's report on the Building, but then moved to dismiss the complaint (Pollack Dec. ¶ 3).

Negotiations in the State Court Action recently broke down, despite the State Court judge's two offers, one to have Sponsor perform all work in the HLZA report and then to hold a hearing to apportion the costs between Sponsor and Plaintiff by evaluating which repairs were actually required under the Offering Plan, and the other to personally come to the Building and mediate with the parties and their professionals, both of which Sponsor accepted but Plaintiff rejected (Pollack Dec. ¶ 5). Sponsor expects to file an amended complaint naming all Purchasers by early next week (Pollack Dec. ¶ 6).

**ARGUMENT**

**POINT I:**      **PLAINTIFF'S ILSA CLAIM SHOULD BE DISMISSED**

ILSA is an anti-fraud statute meant to protect consumers against purchasing swampland in Florida on installment. In recent years, with the decelerating real estate market, purchasers have turned ILSA's consumer protections into a sword to avoid contractual obligations or pry concessions from developers. This case is just one more step in the unwarranted transformation of ILSA from a consumer safety statute into a threat to real estate development. The Offering Plan provides for construction to certain specifications, allows Purchasers to provide notice of purported deficiencies to Sponsor, and requires Sponsor to correct any ascertained deficiencies. Rather than follow the parties' contractually mandated remediation process, however, Plaintiff has demanded unwarranted enhancements to the Building in its over 100-page architect's report, refused to meaningfully negotiate scope, and threatened rescission under ILSA if its extortionate demands are not met. These facts present a breach of contract claim, but no more.

**A.      Plaintiff Lacks Standing To Bring An ILSA Claim**

As a threshold matter, Plaintiff lacks standing to bring an ILSA claim on behalf of individual unit owners. Plaintiff claims that it is a "purchaser" under ILSA based on the New York Condominium Act, which provides that a board of managers may bring suit on behalf of two or more unit owners with respect to a cause of action relating to common elements or more than one unit. *See* Real Property Law § 339-dd. But other courts considering similar claims have limited standing under ILSA to individual purchasers. This Court should follow.

An association may bring suit under ILSA on behalf of its members only when "(a) its members would have standing to sue in their own right; (b) the interests it seeks to

protect are germane to the organization's purpose; and (c) neither the claim asserted nor relief sought requires the individual participation of members in the lawsuit." *Woodsmoke Ranch Ass'n v. Woodsmoke Resorts, Inc.*, No. 90 civ. 6975, 1991 U.S. Dist. LEXIS 5689, at *6 (N.D. Ill. May 1, 1991) (finding condominium association lacked standing to bring ILSA claim on behalf on individual unit owners) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 332, 51, 53 L. Ed. 2d 59 (1977)).

Two courts have specifically considered an owner association's standing to bring ILSA claims on behalf of individual unit owners, and both have denied standing. In *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467 (8th Cir. 1985) *cert. denied*, 475 U.S. 1082 (1986), the Court rejected a property owner association's attempt to assert an ILSA claim because of the individualized proof requirements for the claims, including individualized proof of each alleged lot purchase and proof of alleged damages. In *Woodsmoke Ranch*, the Court went further, finding that provisions in the Illinois Condominium Property Act giving a condominium board like Plaintiff power to sue on behalf of unit owners did not permit a board to bring an ILSA suit for three reasons:

1.    State law cannot confer on a party standing to sue under a federal statute;

2.    ILSA only grants a cause of action to "[a] purchaser or lessee"; and

3.    Associational standing could undermine individual unit owner interests, to the extent they are later precluded from asserting individual claims.

1991 U.S. Dist. 5689, at **12-13.

The reasoning in *Terre Du Lac* and *Woodsmoke Ranch* apply to this matter. ILSA only provides a right of action to "purchasers and lessees," 15 U.S.C. § 1709(b), and the New

York Condominium Act cannot expand that jurisdiction. Moreover, allowing the Board to proceed in this matter not only could undermine individual unit owner interests down the road, but will lead to substantial confusion about what claims this Court is being asked to adjudicate. Notably, one Board member has already carved out this litigation unspecified claims for the two apartments he owns – retaining claims "that are personal . . . or unique to those units" – leaving Sponsor Defendants guessing as to what is included in the scope of this lawsuit. The decision of a Board member to carve off his claims from the Board's demand for relief not only raises the question of what claims Plaintiff is pressing, but further raises questions about Plaintiff's ability to adequately represent unit owners.

> In addition, as in *Terre Du Lac*, the case raises individualized issues of proof:
>
> (i)    Standing – each Purchaser will need to show that he or she in fact purchased a unit from Sponsor;
>
> (ii)   Reliance – each Purchaser will need to show his or her reliance on alleged omissions from or misrepresentations in the Offering Plan;
>
> (iii)  Harm – each Purchaser will need to prove that his or her unit has purported construction deficiencies; the report Plaintiff commissioned addresses a number of purported issues in specific units, including heat pump placement, floor installation, window installation, and disability adaptability that will require individualized evidence; and
>
> (iv)   Damages – each Purchaser will need to support the type of relief he or she is seeking (e.g., rescission, specific performance, or monetary damages), as well as the quantum of damages.

To be sure, Plaintiff alleges construction issues that relate to the Building's common elements. But to the extent that those issues cannot be raised by "purchasers" under ILSA, then those issues simply do not state claims under ILSA. This is in keeping with ILSA's purpose, which was to protect purchasers from buying underwater lots in far-flung locales, not to

provide purchasers with a general right to sue in federal court and seek broad equitable remedies for every construction defect or breach of real estate contract.

Given the quantum of individualized proof that the Purchasers will be required to provide, real concerns about Plaintiff's ability to adequately represent all Purchasers fairly and zealously, and the fact that the Real Property Law cannot confer standing on Plaintiff to bring an ILSA claim, this Court should find that Plaintiff lacks standing to bring suit under ILSA.

**B.      The ILSA Claim Is Legally Insufficient Because It Does Not Allege A Statement That Was False When Made Or Purchasers' Reliance**

To plead a claim under ILSA, Plaintiff not only must meet the heightened pleading standard of Rule 9(b), *Moran v. Crystal Beach Capital, LLC*, No. 8:10-cv-1037, 2011 U.S. Dist. LEXIS 569 (M.D. Fla. Jan. 4, 2011) (ILSA claim must be pleaded with Rule 9(b) particularity), but also must specifically allege reliance and a statement or omission that is false when made. *See Dongelewicz v. First Eastern Bank*, 80 F. Supp. 2d 339, 348 (M.D. Pa. 1999).

ILSA prohibits a developer from employing a "scheme to defraud," obtaining money "by means of any untrue statement of a material fact, or any omission to state a material fact necessary" to make a statement not misleading, or engaging in a practice or course of business that operates "as a fraud or deceit." 15 U.S.C. §§ 1703(a)(2)(A)-(C). Because these claims prohibit fraud, they require proof of reliance (as opposed to the other category of claims under ILSA, which mandate that developers of large developments file detailed property reports, and require only that the report "contain" a false material statement, thus avoiding reliance). *See Dongelewicz*, 80 F. Supp. 2d at 348; *see also Weaver v. Opera Tower*, LLC, No. 07-23333, 2008 U.S. Dist. LEXIS 91294 (S.D. Fla. Aug. 1, 2008) (dismissing ILSA claim based on plaintiffs' inability to show reasonable reliance on alleged misrepresentation); *Garcia v. Santa Maria*

8

*Resort, Inc.*, 528 F. Supp. 2d 1283 (S.D. Fla. 2007) (dismissing ILSA claim in part because plaintiffs could not plead reasonable reliance).

A reliance requirement for ILSA's anti-fraud provisions is further supported by securities law. ILSA is based on securities law, and its anti-fraud provisions are almost identical to those in Rule 10b-5. *Compare* 15 U.S.C. § 1703(a)(2) *with* 24 C.F.R. § 240.10b5-1. Reliance is a core element of any Rule 10b-5 pleading. *See State Univ. Retirement System v. Astrazeneca PLC*, No. 08-3185-cv, 2009 U.S. App. LEXIS 13674 (2d Cir. Jun. 25, 2009).

Here, Plaintiff does not even allege reliance. This stands to reason because, as described above, the Board cannot bring a claim under ILSA – the individual Purchasers, with their individual knowledge of their situations and the evidence for each of their claims, are the proper parties. Because Plaintiff does not allege the Purchasers' individual reliance, and likely cannot make such a representation, this Court must dismiss Plaintiff's ILSA claim.

Plaintiff's ILSA claim also falters because Plaintiff does not allege that the Offering Plan contained a present misrepresentation of fact. *See Solomon v. Pendaries Props., Inc.*, 623 F.2d 602 (10th Cir. 1980) (finding ILSA does not confer cause of action for representations that developer intends to carry out); *Prebil v. Pinehurst, Inc.*, 638 F. Supp. 1314, 1318 (D. Mont. 1986) (dismissing ILSA claim based on plaintiff's failure to show misstatement of present fact). Statements that concern only future conduct are not material existing facts, and thus cannot be the basis for a fraud claim. *See, e.g., Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 544 (S.D.N.Y. 2007) (holding that promise to "close on [an] investment" was not material misrepresentation of present fact, but concerned future conduct); *see also MCI WorldCom Commc'ns, Inc. v. N. Am. Commc'ns Control, Inc.*, No. 98 Civ. 6818, 2003 U.S.

Dist. LEXIS 9212, at *28 (S.D.N.Y. June 4, 2003) (dismissing fraud claim where alleged fraudulent statements "concern representations of future intent, not a separate, present fact").

Here, Plaintiff alleges that the Building was not complete when Purchasers entered into the Purchase Agreements so that it can seek to take advantage of ILSA, which does not apply to completed construction (Am. Compl. ¶ 26). But Plaintiff then argues that the Building was not constructed according to the Offering Plan's specifications (Am. Compl. ¶ 43). If the Building still was under construction, then Plaintiff must allege how the statements concerning construction in the Offering Plan were not true when Purchasers entered their contracts. It has not even attempted to do so.

This conundrum proves up the fundamental problem with Plaintiff's ILSA claim. Plaintiff claims that even though Sponsor delivered a building with a TCO (and which now has a permanent certificate of occupancy), and that has been fully occupied for over a year, Sponsor has committed a federal fraud that opens anyone associated with the Building to claims involving a panoply of damages remedies potentially including specific performance and tens of millions of dollars in damages. This case has always been, and remains, a breach of contract action. Although Plaintiff has curtailed some of its initial overreaching with its Amended Complaint by withdrawing several fraud-related claims, it continues to overstep by maintaining an ILSA claim.

## C.  **Plaintiff's Failure to Name Required Parties Requires Dismissal Of This Action**

Assuming that Plaintiff has standing to bring claims relating to individual units, Plaintiff has failed to join parties required in this action by Federal Rule of Civil Procedure 19(a)(1). Rule 19 requires joinder: (1) if in a person's absence, the court will not be able to accord complete relief between the parties; or (2) if a person has an interest in the action and resolution of the action in his or her absence may impede his or her ability to protect that interest;

10

or (3) if a person has an interest in the action and resolution of the action in his or her absence leaves an existing party to risk of "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. Proc. 19(a)(1). This case meets all three standards.

First, without all individual Purchasers, this Court cannot grant complete relief among the existing parties. *See* Fed. R. Civ. Proc. 19(a)(1)(A). The Board alleges a range of construction defects, including ones between apartments or between apartments and common areas. At least one Purchaser has already reserved claims "personal" or "unique" to his units. Given Plaintiff's claims, it is not clear what claims are or may be reserved. For example, that Purchaser has a penthouse with skylights onto the roof. The Board claims that the Building skylights must be replaced. It is unclear under whose claims skylight replacement falls.

Second, all Purchasers have an interest in this litigation – Plaintiff claims to be proceeding on their behalf to resolve issues impacting each Purchaser's apartment – and disposing of this action in their absence may impair their abilities to protect their interests. Fed. R. Civ. Proc. 19(a)(1)(B)(i). For example, Plaintiff previously attempted to block Sponsor Defendants from obtaining a certificate of occupancy for the Building, and may attempt to prevent Sponsor Defendants from obtaining J-51 benefits. Purchasers are entitled to insure that their rights and interests in their apartments are appropriately protected in this action.

Third, Sponsor Defendants will face "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if all Purchasers are not joined. Fed. R. Civ. Proc. 19(a)(1)(B)(ii). Whatever the outcome of the litigation with the Board, individual Purchasers may later be able to bring separate lawsuits. *See Koatz v. 1776 Second Ave. Assocs.*, 244 A.D.2d 201, 664 N.Y.S.2d 32 (2d Dep't 1997) (finding individual unit owners permitted to bring suit after resolution of Board of Manager's case against sponsor, even though initial case

addressed individual units, because Board lacked authority to settle unit owners' claims). Sponsor Defendants could face inconsistent or duplicative obligations based on the various potential litigations. For example, this Court could find that Sponsor Defendants are required to perform certain remedial work in the Building, but then Purchasers could seek additional monetary damages or rescission in a later proceeding.

The individual Purchasers may not wish to be parties to a litigation. But the fact remains that Plaintiff does not have standing, and in any event the Purchasers are required parties under Rule 19. Because Plaintiff has chosen not to include these required parties, this Court should dismiss the action.

**POINT II:   THE COURT SHOULD STAY THIS ACTION IN FAVOR OF THE EXISTING STATE COURT ACTION**

In the alternative, and given the pending State Court Action, which will include all required parties (Pollack Dec. ¶ 6), this Court should stay this action pending resolution of the State Court Action.

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 47 L. Ed. 2d 483 (1976), the United States Supreme Court set six factors to weigh in determining whether abstention is warranted: (1) the assumption of jurisdiction by either court over any res; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which the actions were filed; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *See also De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) (affirming abstention based on number of litigations related filed in state court, even though most litigations were filed after federal action). In considering abstention, courts should bear in mind the underlying policies of Colorado abstention: "the avoidance of forum

shopping and the problem of collateral estoppel." *Rambaran v. Park Square Enters.,* No. 08-cv-247, 2008 U.S. Dist. LEXIS 71538, at \*15 (M.D. Fla. Sept. 22, 2008) (staying ILSA federal action for resolution of related state court action).

    As a threshold matter, this case and the State Court Action are parallel actions. The State Court Action addresses the same issues as in this action -- any remediative work to perform on the Building, and the Purchasers' remedies -- and includes many of the same parties. That there is not complete identity of parties, standing alone, does not indicate that the actions are not parallel. *See Rambaran*, 2008 U.S. Dist. LEXIS 71538, at \*6 (noting parties and issues need only be substantially similar to find parallel actions).

    The *Colorado River* factors strongly favor abstention. Most importantly, the third and fourth factors, avoidance of piecemeal litigation and the order in which the actions were filed, militate in favor of a stay. Sponsor filed the State Court Action weeks before Plaintiff filed this litigation, and Plaintiff joined all substantive issues raised in this litigation by providing HLZA's report pursuant to a Court order in that matter. The judge has held over a dozen substantive conferences with the parties and their professionals testing the parties' concerns and understanding their issues. While a motion to dismiss Sponsor's complaint is pending, Sponsor has notified the Board's counsel that Sponsor will file an amended complaint shortly that includes all required parties for the litigation, including all Purchasers (Pollack Dec. ¶ 6).

    Not only is the State Court Action substantively far advanced from this litigation, but Sponsor will face the risk of inconsistent results in different forums if this case proceeds without all Purchasers. As indicated above, Purchasers may claim not to be bound by this Court's determination and file additional lawsuits against the Sponsor Defendants. Once

Purchasers are joined in the State Court Action, however, all parties can have all of their disputes adjudicated in one forum in one action.

The fifth and sixth *Colorado River* factors also point toward abstention. For the fifth, state law will provide almost all of the decisional authority for this action. In its nine count complaint, Plaintiff asserts only one claim that relies on federal law. Sixth, there is no reason to believe the State Court action will not adequately protect Purchaser's rights. The State Court judge has given amply of his time to understand and address the parties' positions, and ILSA specifically provides for state court jurisdiction over ILSA claims, and even prevents removal of most ILSA claims. 15 U.S.C. § 1719. While Plaintiff's counsel has indicated concern about the State Court judge's ability to address an ILSA claim because counsel has not located any New York State court decisions addressing ILSA, the lack of published decisions does not mean that New York State Courts have not addressed ILSA claims. Further, courts in the Eastern District of New York addressed only one ILSA claim in a published decision before 2010. There is no reason to assume that Justice Schmidt will not be up to the task of an ILSA claim.

Only the first two factors, assumption of jurisdiction over a res and convenience of jurisdiction, do not weigh heavily toward abstention, but rather are neutral. These two neutral factors, standing alone, do not overcome the strong reasons militating for abstention. Further, Plaintiff's counsel has already admitted that Plaintiff's primary reason for filing the federal suit was a naked bid at forum shopping, one of the issues abstention was created to forestall. This Court should accordingly stay this proceeding until resolution of the State Court Action.

**POINT III: THIS COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS**

Plaintiff's sole jurisdictional ground in this Court is its ILSA claim. The parties are not otherwise diverse, and Plaintiff does not state another federal claim. As Plaintiff's

remaining claims would be state common law claims, this Court should not exercise its supplemental jurisdiction over those claims if it dismisses the ILSA claim. *See Brzak v. United Nations*, 597 F. 3d 107, 113-114 (2d Cir. 2010) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.") (internal quotation omitted); *Jetter v. Knothe Corp.*, 324 F. 3d 73 (2d Cir. 2003) (finding district court properly declined to exercise supplemental jurisdiction over state law claims after dismissal of federal law claims); *Giordano v. City of New York*, 274 F. 3d 740, 755 (2d Cir. 2001) (refusing to exercise jurisdiction over state law claims upon dismissal of federal claims). This is particularly true here, where there is already an action pending in the State court that addresses Plaintiff's claims.

**POINT IV: THE BREACH OF CONTRACT CLAIMS AGAINST ALL SPONSOR DEFENDANTS BUT SPONSOR FAIL BECAUSE THERE ARE NO CONTRACTS BETWEEN PLAINTIFF AND THOSE DEFENDANTS**

Plaintiff asserts breach of contract claims against each of Sponsor Defendants. As to each of Sponsor Defendants aside from Sponsor, Plaintiff's claim is based on each signing a certification in the Offering Plan that the Offering Plan was accurate and complete (Amd. Compl. ¶ 94). From there, Plaintiff claims that the certification "is an Agreement by [Sponsor Defendants other than Sponsor] with Purchasers" concerning the units, each Purchaser signed a purchase agreement, and these Sponsor Defendants "breached the agreement with Purchasers" by permitting the Building to be constructed with design and construction defects (Amd. Compl. ¶¶ 96, 98). Notably, Plaintiff does not claim that any Purchasers counter-signed a Purchase Agreement or other document with Sponsor Defendants other than Sponsor. Plaintiff could not, as Sponsor is the only party that counter-signed the Purchase Agreements.

While the Purchase Agreements incorporate the Offering Plan by reference, that does not create contractual privity. As there is no independent contract between Purchasers and

Sponsor Defendants other than Sponsor, there could not be a breach of contract claim against them, even if brought by Purchasers. *See Mandracchia v. 901 Stewart Partners, LLC*, Index No. 14488/08, 2009 N.Y. Misc. LEXIS 4455, at \*\*18 (Sup. Ct. Nassau Cty. Dec. 10, 2009) (dismissing breach of contract claims against all defendants but sponsor that actually entered into agreement with purchaser); *Board of Mgrs. of the Arches at Cobble Hill Condominium v. Hicks & Warren LLC*, Index No. 19643, 2007 NY Slip Op 50297U, at \*7 (Sup. Ct. Kings Cty. Feb. 20, 2007) (dismissing breach of contract claims against sponsor's members premised on claim that members had signed offering plan based on lack of privity); *see also Tutora v. Siegel*, 40 A.D.3d 227, 833 N.Y.S.2d 385 (1st Dep't 2007) (dismissing breach of contract claim when plaintiff could not show contract with defendant).

**POINT V:**     **PLAINTIFF'S     NEGLIGENT     MISREPRESENTATION     AND NEGLIGENCE CLAIMS ARE BARRED**

Attempting to shoehorn in additional claims, Plaintiff asserts negligence and negligent misrepresentations claims against Sponsor Defendants. Both claims are barred for a variety of reasons. To begin, Plaintiff's claims stem exclusively from purported misrepresentations in the Offering Plan, and particularly a certification whose form and content is required word-for-word by regulations promulgated under the Martin Act. As there is no private right of action under the Martin Act, however, Plaintiff's claims are precluded. In addition, while Plaintiff attempts to plead a "fiduciary" relationship with Sponsor Defendants by painting themselves as "young first-time purchasers," the fact is that the Purchasers entered into an arm's-length contractual relationship with Sponsor, which did not have any special duties or fiduciary obligations to Purchasers. And to the extent Plaintiff's breach of contract claims against Sponsor Defendants survive, these tort claims are entirely redundant.

## A.     Plaintiff's Tort Claims Are Barred By The Martin Act

The New York State Court of Appeals has recently made clear that a litigant cannot avoid the Martin Act's limitations on private actions by bringing a claim on a Martin Act-governed document (like an offering plan) and terming it a common law claim. In *Kerusa Co. LLC v. W10Z/515 Real Estate Limited Partnership*, 12 N.Y.3d 236, 879 N.Y.S.2d 17 (2009), an apartment purchaser brought common law fraud and gross negligence claims, arguing that the building sponsor's omissions and misstatements in the offering plan and related marketing materials hid significant design and construction defects. The Court of Appeals dismissed the case, finding that its acceptance not only "would invite a backdoor private cause of action to enforce the Martin Act," but further could create significant burdens on developers to avoid having "every potential latent construction defect case [transformed] into a claim for common-law fraud on account of alleged omissions in Martin Act disclosures." 12 N.Y.3d at 245-46, 12 N.Y.S.2d at 245; *see also Whitehall Tenants Corp. v. Estate of Olnick*, 213 A.D.2d 200, 623 N.Y.S.2d 585 (1st Dep't 1995) (dismissing board claims against sponsor based on Martin Act preemption); *Thompson v. Parkchester Apts. Co.*, 249 A.D.2d 68, 670 N.Y.S.2d 858 (1st Dep't 1998) (dismissing claims against sponsor based on Martin Act preemption); *15 East 11th Apt. Corp. v. Elghanayan*, 220 A.D.2d 295, 632 N.Y.S.2d 119 (1st Dep't 1995) (same).

The primary Second Circuit case squarely addressing Martin Act preemption, *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001), is in accord, affirming dismissal of the plaintiff's breach of fiduciary duty claim because "there is no implied private right of action under the Martin Act." *Id.* at 190; *see also Revak v. SEC Realty Corp.*, 18 F.3d 81, 90-91 (2d Cir. 1994) (refusing to "expand common law disclosure obligations to allow reliance upon disclosures and representations required by the Martin Act" and dismissing fraud

and negligent misrepresentation claims).  Any number of federal and state courts have held that causes of action relating to securities fraud that do not include scienter as an essential element (such as negligent misrepresentation and negligence) are typically preempted by the Martin Act, reasoning that causes of action, like the Martin Act itself, that do not require proof of deceitful intent, intercede in the Attorney General's exclusive domain under the Martin Act.  *See, e.g.*, *Stephenson v. Citco Group Limited*, No. 09 CV 00716, 2010 U.S. Dist. LEXIS 32321, at \*45 (S.D.N.Y. April 1, 2010) (collecting New York and federal cases and holding that "overwhelming weight of authority" supports Martin Act preemption of negligence claim); *CRT Invs., Ltd. v. Merkin*, Index No. 601052/09, 29 Misc. 3d 1218A, 2010 N.Y. Misc. LEXIS 5282 (Sup. Ct. N.Y. Cty. May 9, 2010) (same); *Aris Multi- Strategy Offshore Fund v. Devaney*, 26 Misc.3d 1221[A], 907 N.Y.S.2d 98 (Sup. Ct. N.Y. Cty. 2009) (noting "vast majority" of authority supports Martin Act preemption and finding negligence and negligent misrepresentation claims preempted); *see also Rego Park Gardens Owners, Inc. v. Rego Park Gardens Assocs.*, 191 A.D.2d 621, 595 N.Y.S.2d 492 (2nd Dept 1993) (finding negligent misrepresentation claim preempted by Martin Act); *Horn v. 440 E. 57th Co.*, 151 A.D.2d 112, 547 N.Y.S.2d 1 (1st Dep't 1989) (same).

As described above, the only purported misrepresentations and omissions on which Plaintiff can rely – and the only ones stated with any specificity in the Amended Complaint – come directly from the Offering Plan.  Plaintiff's claim accordingly runs afoul of the Martin Act.  *See Hamlet on Olde Oyster Bay Home Owners Assn., Inc. v. Holiday Org., Inc.*, 65 A.D.3d 1284, 887 N.Y.S.2d 125 (2d Dep't 2009) (dismissing fraudulent inducement and negligent misrepresentation claims based on alleged unrealistic budget estimates in offering plan as precluded by Martin Act); *Merin v. Precinct Developers LLC*, 74 A.D.3d 688, 902 N.Y.S.2d

821 (1st Dep't 2010) (dismissing fraud claim alleging material omissions from offering plan disclosures required by Martin Act).

The only specific misrepresentations Plaintiff alleges against Sponsor Defendants but Sponsor, in particular, are grounded on their signing a certification required by and whose form is detailed in the Martin Act (Amd. Compl. ¶ 31), and whose contents are included "word-for-word" in the Attorney General's disclosure regulations. *See Kerusa*, 12 N.Y.3d at 244-45 (citing disclosure regulations in 13 NYCRR § 20.4[b]). These claims are indistinguishable from the claims in *Kerusa*, which were based on purported misrepresentations in plan amendment certifications. 12 N.Y.3d at 246; *see also Mandracchia*, 2009 N.Y. Misc. LEXIS 4455, at \*\*11-12 (dismissing tort claims against sponsor based on sponsor's execution of certification required by Attorney General regulations); *Bridge St. Homeowners Ass'n v. Brick Condominium Devs., LLC*, 18 Misc. 3d 1128A, 856 N.Y.S.2d 496 (Sup. Ct. Kings Cty. 2008) (noting purported misrepresentations in offering plan certifications will not support tort claim).

Plaintiff also generally alleges that in marketing materials, Sponsor Defendants and others described the premises as hip and modern (Amd. Compl. ¶¶ 22-23). This vague claim fails for number of reasons. Among other things, it does not specify who prepared marketing materials, what materials were provided and by whom, to whom materials were provided, whether Purchasers relied on the materials, or what was purportedly false about what sounds like mere puffery. These broad brush allegations against all Defendants do not provide meaningful notice of Plaintiff's claims. Moreover, as a matter of law, even if Plaintiff had specified particular misrepresentations in marketing materials presented to any individual unit owners, reliance thereon would be barred as a matter of law because the integration clause in the Purchase Agreements disclaims reliance on any "sales plans, selling brochures, advertisements,"

or other representations (Pollack Dec. Ex. 3 at ¶ 20). *See, e.g., Oko v. Walsh,* 28 A.D.3d 529, 814 N.Y.S.2d 655 (2d Dep't 2006) (noting reliance on alleged oral representations in light of integration clause was not reasonable as a matter of law); *see also Weaver,* 2008 U.S. Dist. LEXIS 91294, at *15 (dismissing ILSA claim based on marketing materials because integration clause in purchase agreement prevented reasonable reliance on such materials).

Because Plaintiff's negligence and negligent misrepresentation claims against Sponsor Defendants stem from Martin Act requirements, these claims must be dismissed.

**B.    Plaintiff Has Not Alleged Any "Special Relationship" With Sponsor Defendants To Support Negligence And Negligent Misrepresentation Claims**

A negligent misrepresentation claim "requires proof that a defendant had a duty to use reasonable care to impart correct information due to a special relationship existing between the parties, that the information was false, and that a plaintiff reasonably relied on the information." *Fresh Direct, LLC v. Blue Martini Software, Inc.*, 7 A.D.3d 487, 489, 776 N.Y.S.2d 301, 302-303 (2nd Dept 2004) (citations omitted). "'[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Id.*, quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715 (1996).

Other than a contractual relationship with Sponsor, Plaintiff has failed to articulate the nature of the alleged "special relationship" between the Purchasers and any of the Sponsor Defendants. Plaintiff's attempt to gin up a "fiduciary" relationship because Sponsor Defendants allegedly were more experienced than the "young first-time purchasers," whichever Purchasers to whom this moniker applies, does not set out a basis for a fiduciary relationship. *See Board of Mgrs. of 374 Manhattan Ave. Condominium v. Harlem Infil LLC*, Index No.

105826/08, 2010 N.Y. Misc. LEXIS 2211 (Sup. Ct. N.Y. Cty. Jun. 18, 2010) (dismissing negligence and negligent misrepresentation claims against sponsor and its principals based on purported misrepresentations in offering plan hiding construction defects based on lack of special relationship between sponsor and purchasers); *see also Board of Mgrs. of Acorn Ponds at North Hills Condominium I v. Long Pond Investors*, 233 A.D.2d 472, 650 N.Y.S.2d 987 (2d Dep't 1996) (rejecting claim that sponsor had fiduciary relationship with condominium board of managers). Thus, the negligent misrepresentation claim should be dismissed.

Similarly, to be liable to Plaintiff for negligence, the Sponsor Defendants must have had a recognized duty of care to Plaintiff. *See In re Agape Litigation*, 681 F. Supp. 2d 352, 359 (E.D.N.Y. 2010) (dismissing negligence claims when defendants did not have duty of care). "A defendant is not liable in negligence unless it has assumed a duty to exercise reasonable care to prevent foreseeable harm to the plaintiff." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (dismissing negligence claim when plaintiff could not show duty of case as matter of law). Here, again, Plaintiff makes a conclusory claim that the Sponsor Defendants had a duty of care to Plaintiff and Purchasers to supervise and oversee design and construction professionals (Amd. Compl. ¶ 129), but Plaintiff does not provide a basis for that duty. Sponsor had only a contractual duty to Purchasers, and the remaining Sponsor Defendants did not have any relationship to Purchasers. Because Plaintiff's negligence claim attempts to manufacture a duty where none exists, it must be dismissed.

## C.   The Negligence and Negligent Misrepresentation Claims Must Be Dismissed As Duplicative Of The Breach Of Contract Claims

Plaintiff's primary claim is that Sponsor breached the Purchase Agreements Purchasers entered into with the Owners. To bootstrap a negligent misrepresentation, Plaintiff alleges that Sponsor Defendants, "by reason of their position as developers and offerors of the

Condominium," and because of their purported "superior knowledge" of real estate transactions and offering requirements, "owed a fiduciary's duties" to Purchasers (Amd. Compl. ¶¶ 110-11). Similarly, to support a negligence claim, Plaintiff claims that Sponsor Defendants had a duty of care to Plaintiff and the Purchasers to oversee the professionals carrying out the Building design and construction (Amd. Compl. ¶ 128).

The fact is that Sponsor entered into an arm's length contract with each Purchaser (Pollack Dec. Ex. 3). In the Purchase Agreements, Sponsor was obligated to sell apartments that met certain construction specifications (Pollack Dec. Ex. 3 at ¶ 17). Any purported failure by Sponsor to deliver the contractually required apartment may be a breach of the Purchase Agreement, and the Offering Plan contains detailed provisions for the types of remediation for which Sponsor is responsible and how Sponsor should address such remediation. But Plaintiff's claims that Sponsor failed to deliver apartments as required under the Purchase Agreement do not also sound in negligence and negligent misrepresentation against Sponsor, and certainly do not create claims against the remaining Sponsor Defendants.

Under New York law, "'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.'" *Waterville Inv., Inc. v. Homeland Sec. Network, Inc.*, No. 08 CV 3433, 2010 U.S. Dist. LEXIS 66367 (E.D.N.Y. July 2, 2010) (dismissing negligence claim as duplicative of breach of contract claim) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987) (affirming dismissal of negligence claims)); *see also Chase Manhattan Bank, N.A. v. Remington Prods.*, 865 F. Supp. 194, 200 (S.D.N.Y. 1994) ("New York does not recognize a cause of action for negligent performance of a contract."), *aff'd*, 71 F.3d 407 (2d Cir. 1995).

Because the negligence and negligent misrepresentation claims are duplicative of the breach of contract claims, these claims should be dismissed to the extent that the breach of contract claims survive. *See, e.g.*, *Hamlet on Olde Oyster Bay*, 65 A.D.3d at 1288, 887 N.Y.S.2d at 128 (dismissing negligence claim against sponsor based on purported construction defects as duplicative of breach of contract claim); *Old Republic National Title Insurance Company v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 790 N.Y.S.2d 143 (2d Dep't 2005) (dismissing negligence claim that did not establish duty of care independent of contract); *Bridge St. Homeowners Ass'n*, 18 Misc. 3d at 1128A, 856 N.Y.S.2d at 496 (dismissing tort claims relating to purported misrepresentations in offering plan as duplicative of breach of contract claims).

**POINT VI:   BECAUSE PLAINTIFF HAS NOT ALLEGED MESHBERG MARTIN OR 72 HOLDINGS PARTICIPATED IN THE SALES PROCESS, ALL CLAIMS AGAINST THEM SHOULD BE DISMISSED**

Plaintiff asserts claims against Meshberg Martin and 72 Holdings based on the spare allegations that they were members of Sponsor (Amd. Compl. ¶¶ 7, 8), and signed a certification in the Offering Plan (Amd. Compl. ¶¶ 31, 72). In fact, the certification is not signed by Meshberg Martin or 72 Holdings, and it does not even list Meshberg Martin on it (Pollack Dec. Ex. 2). Because Plaintiff does not allege any participation in the sales process by 72 Holdings or Meshberg Martin but execution of the certification, and the documentary evidence proves that neither executed the certification, the ILSA claim against both should be dismissed. Further, because neither Meshberg Martin nor 72 Holdings were party to any contracts with individual Purchasers, Plaintiff does not allege that either made any particular representations to any Purchasers, and Plaintiff does not allege either's role in the construction process, Plaintiff has failed to properly allege any state law claims against Meshberg Martin or 72 Holdings.

## POINT VII: THIS COURT SHOULD NOT GRANT PLAINTIFF LEAVE TO AMEND A SECOND TIME

This Court made clear at the preliminary conference that Plaintiff should select its best claims and plead them as well as possible. In response, Plaintiff winnowed its Amended Complaint from 15 causes of action to 9, but maintained a host of insufficient or untenable claims. To begin, the Court need not grant Plaintiff leave to amend if amendment would be futile. *See De Asis v. New York City Police Dep't*, No. 08 cv 4597, 2009 U.S. App. LEXIS 24254 (2d Cir. Nov. 5, 2009) (affirming refusal to allow futile amendment). As described above, Plaintiff does not have standing to assert an ILSA claim, and nothing about its pleading can change that fact. Similarly, Plaintiff's state law claims fail for a variety of reasons at law, including lack of privity, a Martin Act bar, and Plaintiff's inability to create a special relationship or duty where none exists. Because amendment would accordingly be futile, this Court should not grant Plaintiff leave to replead. In any event, because Plaintiff has already repleaded once, and this case already presents a duplication of Sponsor's first-filed State Court Action, there is no reason for this Court to permit Plaintiff yet another bite at the apple.

24

## CONCLUSION

For all of the foregoing reasons, Sponsor Defendants respectfully request that the

Court and dismiss the Amended Complaint, and grant such other relief to movants as this Court

deems just.

Dated: New York, New York
        March 9, 2011

### MORRISON COHEN LLP

By:    /s/
       Y. David Scharf
       Gayle Pollack
       909 Third Avenue
       New York, New York  10022
       (212) 735-8600

*Attorneys for Defendants 72 Berry Street, L.L.C. 72 Berry Street Holdings, L.L.C., Meshberg Martin, LLC, Matthew Landau, Justin Meshberg, and David Martin*