UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X

THE BOARD OF MANAGERS OF THE MASON FISK          Case No. 10-CIV-05782 (BMC)
CONDOMINIUM, FOR ITSELF AND AS STATUTORY
AGENT OF THE UNIT OWNERS OF THE MASON FISK
CONDOMINIUM,

                                                    Plaintiff,

                        - against -


72 BERRY STREET, L.L.C., 72 BERRY STREET
HOLDINGS, L.L.C., MESHBERG MARTIN, LLC,
MATTHEW LANDAU, JUSTIN MESHBERG, DAVID
MARTIN, THE CORCORAN GROUP INC. D/B/A THE
CORCORAN GROUP REAL ESTATE, JOHN J. NATOLI
CONSULTING ENGINEERS, AND JOHN J. NATOLI

                                                    Defendants.

---------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS


**Balber Pickard
Maldonado & Van Der Tuin, PC**

**1370 Avenue of the Americas
New York, New York 10019-4602
212 246-2400**


**Attorneys for the Plaintiff**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................................iv

INTRODUCTION................................................................................................................1

COUNTER-STATEMENT OF FACTS..............................................................................1

ARGUMENT.......................................................................................................................2

      MOTION TO DISMISS STANDARD.............................................................................3

      **I.  THE DEFENDANTS' MOTIONS TO DISMISS THE ILSA
      CLAIM MUST BE DENIED WHERE THE BOARD HAS STANDING
      AND THE ILSA CLAIMS ARE CORRECTLY DENIED**.............................4

            **A.**    **The Board Has Standing To Bring An ILSA Claim
                 Pursuant to RPL § 339-dd, Pursuant To The
                 Offering Plan And Pursuant To Decisional Law Of
                 New York**....................................................................................4

                 *1. Real Property Law § 339-dd Confers Authority Upon
                 The Board To Pursue Claims Affecting The Common Elements
                 And More Than One Unit*.............................................................5

                 *2.  The Offering Plan Requires The Board To Bring Claims
                 On Behalf Of Individual Purchasers Against The Sponsor*............6

                 *3. The Defects And Failures Alleged In The Amended
                 Complaint Affect  The Common Elements Or More Than
                 One Unit*.......................................................................................7

            **B.**    **Individual Unit Owners Are Not Necessary Parties
                 In This Action And Even If They Are Necessary
                 Parties, The Proper Remedy Is Joinder And Not
                 Dismissal Of This Action**.............................................................8

            **C.**    **Neither Proof Of Reliance Nor Compliance With
                 Rule 9(b) Is Required Under ILSA**................................................9

            **D.**    **The Ameded Complaint Sufficiently Alleges
                 Misrepresentations And Ommissions Of Material
                 Facts Under ILSA**........................................................................12

i

    E.       Members And The Corcoran Group May Be Held
              Liable As Developers And Agents Under ILSA..........................13

**II. THE COURT SHOULD RETAIN JURISDICTION AND REFRAIN
FROM STAYING THIS ACTION IN FAVOR OF THE PENDING
STATE COURT ACTION BECAUSE THE STATE COURT ACTION
IS NOT CONCURRENT WITH THIS ACTION AND THE *COLORADO
RIVER* FACTORS MITIGATE AGAINSTS ABSTENTION**..........................14

**III.  EVEN IF THE ILSA CLAIM IS DISMISSED, JUDICIAL
ECONOMY, CONVENIENCE AND FAIRNESS REQUIRE THIS
COURT TO EXERCISE SUPPLEMENTAL JURISDICTION OVER
THE REMAINING STATE LAW CLAIMS**.......................................................17

**IV.  THE BOARD'S STATE LAW CLAIMS ARE PROPERLY
ASSERTED**...............................................................................................................18

    A.       The Board May Properly Plead Alternative Theories
              Of Recovery At This State Of The Proceedings........................18

    B.       The Board Has Viable Causes Of Action For Breach
              Of Contract..............................................................................................19

          *1. The Board Has Properly Pleaded a Claim for Breach
             Of Contract Against The Members and Principals.*..................19

          *2. The Board Has Properly Pleaded A Claim For
             Breach of Contract Against The Natoli Defendants*...................22

    C.       The Board's Tort Claims Are Not Barred By The
              Martin Act.................................................................................................25

    D.       The Board Has Properly Pleaded Causes Of Action
              For Negligence And Negligent Misrepresentation...................26

          *1. The Amended Complaint States A Cause of Action for
             Negligent Misrepresentation Against The Sponsor
             Defendants And The Corcoran Group*.........................................27

          *2. The Amended  Complaint States A Cause of Action for
             Negligence Against The Sponsor Defendants*.............................31

           *3. The Amended Complaint States viable Causes of Action
             For Negligent Misrepresentation And Negligence Against
             The Natoli Defendants*................................................................32

**V.  THE BOARD SHOULD BE ALLOWED TO AMEND ITS
COMPLAINT A SECOND TIME**....................................................................33

**CONCLUSION**................................................................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adler v. Pataki,*
    185 F.3d 35 (2d Cir. 1999) ...................................................................... 19

*Alliance of Am. Insurers v. Cuomo,*
    854 F.2d 591 (2d Cir. 1988) ..................................................................... 16

*An v. Leviev Fulton Club, LLC,*
    09-CV-1937, 2010 WL 3291402 (S.D.N.Y. Aug. 10, 2010) ............................. 4, 17

*Anwar, et al., v Fairfield Greenwich Ltd., et al.*
    728 F. Supp. 2d 354 (S.D.N.Y. 2010) ........................................................ 27

*Assoc. Dry Good Corp. v. Towers Fin. Corp.,*
    920 F.2d 1121 (2d Cir. 1990) ...................................................................... 9

*Beauford v. Helmsley,*
    740 F. Supp. 201 (S.D.N.Y. 1990) ............................................................ 4, 17

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................. 3, 4

*Bodansky v. Fifth on the Park Condo, LLC*
    Nos. 10-720-CV, et al, 2011 WL 891028 (2d Cir. Mar. 15, 2011) ................... passim

*Bryan v. Amrep Corp.,*
    429 F.Supp. 313 (S.D.N.Y. 1977) ........................................................ 4, 10, 17

*Campo v. 1ˢᵗ Nationwide Bank, FN,*
    857 F.Supp. 264 (E.D.N.Y. 1994) ............................................................ 20

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800, 96 S.Ct. 1236 (1976) .................................................... 14, 15, 16

*Conley v. Gibson,*
    355 U.S. 41 (1957) ................................................................................... 3

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991), *cert. denied,* 503 U.S. 960 (1992) ........................ 34

*De Luz Ranchos Invest., Ltd. v. Coldwell Banker 7 Co.,*
    608 F.2d 1297 (9ᵗʰ Cir. 1979) .................................................................... 14

*Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*,
    153 F. Supp. 2d 193 (E.D.N.Y. 2001) ...................................................................20

*Disandro v. Makahuena Corp.*,
    588 F.Supp 889 (D.Haw. 1984)...........................................................................10

*Dobbs v. Dobbs*,
    2008 WL 3843528 (S.D.N.Y. Aug. 14, 2008).........................................................19

*Foman v. Davis*,
    371 U.S. 178, 182 (1962)....................................................................................34

*Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*,
    426 U.S. 776, *rev. denied*, 429 U.S. 875 (1976).........................................................4

*Gibbes v. Rose Hill Plantation*,
    794 F.Supp. 1327 (Dist.Ct. S.C. 1992)...............................................10, 12, 13, 14

*Gonzalez v. Caballero*,
    572 F. Supp. 2d 463 (S.D.N.Y. 2008) ...................................................................32

*Griffith v. Steiner Williamsburg, LLC*,
    09-CIV-9747 (AJP), 2010 WL 4970595 (S.D.N.Y. Dec, 13, 2010) .................................4, 17

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir 1996) ..................................................................................20

*Hester v. Hidden Valley Lakes, Inc., et al.*,
    495 F.Supp. 48 (N.D. Miss. 1980)........................................................................14

*Husted v. Amrep. Corp.*,
    429 F.Supp. 298 (S.D.N.Y. 1977) ....................................................9, 10, 12, 14

*Hydro Inv., Inc. v. Trafalgar Power, Inc.*,
    227 F.3d 8 (2d Cir. 2000) ..................................................................................27

*In re Agape Litigation*,
    681 F.Supp. 2d 353 (E.D.N.Y. 2010) ...................................................................32

*Kamhi v. Cohen*,
    512 F.2d 1051 (2d Cir. 1975) ................................................................................9

*Kemp v. Cost Control Mktg. and Sales Mgmt. of Virginia, Inc.*,
    790 F.Supp. 1275 (W.D. Va. Dist. Ct. 1992) .........................................................14

*Kenneally v. Bank of Nova Scotia*,
    711 F. Supp. 2d 1174 (SD Ca. 2010).............................................................10, 12

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998) ...................................................................................18

*Mills v. Polar Molecular Corp.*,
  12 F.2d 1170 (2d Cir. 1993) ...................................................................................3

*Nat'l City Comm. Capital Co. v. Global Golf, Inc.*,
  No. 09-CV-0307 (JFB)(AKT), 2009 WL 1437620 (May 20, 2009) ......................................19

*Nowak v. Ironworkers Local 6 Pension Fund*,
  81 F.3d 1182 (2d Cir. 1996) ..................................................................................18

*Panaguinas v. Aldon Co. Inc.*,
  2006 WL 2568210 (Dist.Ct. N.D. Ind. Sept. 5, 2006) ........................................................10

*Posner v. Minnesota Mining and Manuf. Co. Inc.*,
  713 F.Supp. 562 (E.D.N.Y. 1989) .............................................................................20

*Raucci v. Town of Rotterdam*,
  902 F.2d 1050 (2d Cir. 1990) .................................................................................18

*Romero v. Borden East River Realty*,
  09-CV-665 (ARR), 2010 WL 5758981 (E.D.N.Y. Mar. 11, 2010) ..................................4, 17

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) ....................................................................................4

*Santidrian v. Landmark Custom Ranches, Inc.*,
  No. 10-11375, 2010 WL 506256 (11th Cir. Dec. 13, 2010) ................................................14

*Sea Shelter IV, LLC v. TRG Sunny Isles V, Ltd., TRG Sunny Isles V, LLC*,
  08-21767-CIV, 2009 WL 692469 (S.D. Fla. Mar. 17, 2009) .................................................13

*Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*,
  772 F.2d 467 (8th Cir. 1985), *cert. denied*, 475 U.S. 1082 (1986) ...........................................5

*United States v. Suffolk Cons. Co., Inc.*,
  No. 95 CIV 9363 (SS), 1996 WL 391875 (S.D.N.Y. July 12, 1996) .......................................3

*Village of Westfield, N.Y. v. Welch's*,
  170 F.3d 116 (2d Cir. 1999) ..............................................................................15, 16

*Villager Pond, Inc. v. Town of Darien*,
  56 F.3d 375 (2d Cir. 1995) .....................................................................................3

*Williams v. Brooklyn Union Gas Co.*,
  819 F.Supp. 214 (E.D.N.Y. 1993) ............................................................................34

*Woodsmoke Ranch Ass'n v. Woodsmoke Resorts, Inc.,*
No. 90 civ. 6975, 1991 WL 70924 (N.D. Ill. May 1, 1991) ......................................................5

**STATE CASES**

*200 East Partners v. Gold,*
997 So.2d 466 (Fla. 4th D.C.A. 2008) ....................................................................12

*Ackman v. Merchants Mort'g & Trust Corp.,*
645 P.2d 7 (Sup. Ct. Colo. 1982) ....................................................................9, 10, 13

*Assured Guar. (UK) Ltd. V. J.P. Morgan Inv. Mgmt. Inc.,*
80 A.D.3d 293, 915 N.Y.S.2d 7 (1st Dep't 2010) ....................................................26

*Bd. of Mgrs. of 374 Manhattan Ave. Condo. v. Harlem Infil LLC*, Index No. 105826/08, 2010 N.Y.
Misc. LEXIS 2211 (Sup. Ct. N.Y. Cty. Jun. 18, 2010) ............................................30

*Bd. of Mgrs. of Acorn Ponds at North Hills Condo. I v. Long Pond Investors,*
233 A.D.2d 472, 650 N.Y.S.2d 987 (2d Dep't 1996) ................................................30

*Bd. of Mgrs. of Alfred Condo. v. Carol Mgmt.,*
214 A.D.2d 380, 624 N.Y.S.2d 598 (1st Dep't 1995) ........................................23, 32

*Bd. of Mgrs. of the Astor Terrace Condo. v. Schuman, Lichtenstein, Claman & Efron,*
183 A.D.2d 488, 583 N.Y.S.2d 398 (1st Dep't 1992) ................................23, 31, 32

*Bd. of Mgrs. of the Chelsea 19 Condo. et al. v. Chelsea 19 Ass'n,*
73 A.D.2d 581, 905 N.Y.S.2d 8 (1st Dep't 2010) ......................................................5

*Bd. of Mgrs. of Marke Gardens Condo. v. 240/242 Franklin Ave. LLC,*
20 Misc. 3d 1138(A), 872 N.Y.S.2d 689 (Sup. Ct. Kings Co. 2008) ..............................passim

*Benjamin v. City of New York,*
99 A.D.2d 995 (1st Dep't 1984) ....................................................................31

*Bridge Street Homeowners Ass'n v. Brick Condo. Dev., LLC,*
18 Misc.3d 1128(A), 856 N.Y.S.2d 496 (Sup. Ct. Kings Co. 2008) ....................23, 32, 33

*Caboara v. Babylon Cove Dev., LLC,*
54, A.D.3d 79, 862 N.Y.S.2d 535 (2d Dep't 2006) ........................................21, 26

*Caprer v. Nussbaum,*
36 A.D.3d 176, 825 N.Y.S.2d 55 (2nd Dep't 2006) ....................................................5

*CMMF, LLC v. J.P. Morgan Inv. Mgmt. Inc.,*
78 A.D.3d 562, 915 N.Y.S.2d 2 (1st Dep't 2010) ....................................................26

De Roche v. Dame,
  75 A.D.3d 384, 430 N.Y.S.2d 390 (3d Dep't 1980)................................................30

Devlin v. 645 First Avenue Manhattan Co.,
  229 A.D.2d 343, 645 N.Y.S.2d 476 (1st Dep't 1996)...............................................7

DiFabio v. Omnipoint Comm.,
  66 A.D.3d 635, 887 N.Y.S.2d 168 (2d Dep't 2009)..................................................6

Dunlop Dev. Corp. v. Spitzer,
  26 A.D.3d 180, 810 N.Y.S.2d 28 (1st Dep't 2006).................................................25

Hansen v. Burton,
  No. 101440/2006, 2006 WL 3837213 (N.Y. Sup. Richmond Co. Dec. 21, 2006)............28, 29

Hicks v. Warren,
  2007 WL 4394823 (N.Y. Sup. Kings Co. Dec. 18, 2007)........................................22

Houlihan/Lawrence, Inc. v. Duval,
  228 A.D.2d 560, 644 N.Y.S.2d 553 (2d Dep't 1996)..............................................28

Joseph v. NRT Inc.,
  18 Misc.3d 296, 853 N.Y.S.2d 481 (Civ. Ct. N.Y. Co. 2007)..................................25

Kerusa Co. LLC v. W10Z/515Real Estate Limited Partnership,
  12 N.Y.3d 236, 879 N.Y.S.2d 17 (2009)........................................................25, 26

Kindel v. Kaufman and Broad Homes of Long Island, Inc.,
  67 A.D.2d 938, 413 N.Y.S.2d 199 (2d Dep't 1979)................................................7

Monarch Owners Comm. v. Abrams,
  N.Y.L.J. Feb. 7, 1989, p. 21, co. 4 (Sup. Ct. N.Y. Co. 1989)................................23

Ossining Union Free School Dist. v. Anderson LaRocca Anderson,
  73 N.Y.2d 417, 541 N.Y.S.2d 335 ...............................................................27, 28

Rasmussen v. A.C.T. Env't Servs., Inc.,
  739 N.Y.S.2d 220 (3d Dep't 2002) ...............................................................26

Residential Bd. of Mgrs. of Zeckendorf Towers v. Union Square-14th Street Ass'n.,
  190 A.D.2d 636, 594 N.Y.S.2d 161 (1st Dep't 1993)..............................................6

Ricciardi v. Frank,
  163 Misc.2d 337, 620 N.Y.S.2d 918 (City Ct.Westchester Co. 1994)......................31

Scalp & Blade, Inc. v. Advest, Inc.,
  281 A.D.2d 882 (4th Dep't 2001)...................................................................26

*Schuer v. Rhodes,*
  416 U.S. 232, 235-36 (1974)...................................................................................3

*Sommer v. Federal Signal Corp.,*
  79 N.Y.2d 540, 583 N.Y.S.2d 957 (1992)...........................................................33

*Sykes v. RFD Third Ave. 1 Assoc., LLC,*
  67 A.D.3d 162, 884 N.Y.S.2d 745 (N.Y.A.D. 1 Dept. Sep 08, 2009) ....................23

*Tiffany at Westbury Condo. by Its Bd. of Mgrs. v. Marelli Dev. Corp.,*
  40 A.D.3d 1073, 840 N.Y.S.2d 74 (2d Dep't 2007)......................................6, 7, 21

*Tutora v. Siegel,*
  40 A.D.3d 227, 833 N.Y.S.2d 385 (1st Dep't 2007)...............................................22

**FEDERAL STATUTES**

15 U.S.C. § 1701, *et seq.* ..........................................................................3, 4, 13, 18

Securities Act of 1933 ...................................................................................3, 4, 9, 10

**STATE STATUTES**

New York Real Property Law § 339-dd...........................................................2, 5, 6

**RULES**

Rule 8(a)(2 ........................................................................................................3

Rule 8(e)(2)........................................................................................................19

Rule 9.................................................................................................4, 9, 10, 11, 12

Rule 12(b)(1) .....................................................................................................3

Rule 12(b)(6) .....................................................................................................3

Rule 15(a) ..........................................................................................................34

Rule 19...............................................................................................................9

**INTRODUCTION**

Plaintiff The Board of Managers of The Mason Fisk Condominium (the "Board") respectfully submits this memorandum of law in opposition to these parallel motions to dismiss the Board's Amended Complaint, dated February 23, 2011 (the "Amended Complaint") by Defendants 72 Berry Street, L.L.C., 72 Berry Street Holdings, L.L.C., Meshberg Martin, LLC, Matthew Landau, Justin Meshberg and David Martin (collectively, "Sponsor Defendants"),[1] by the Corcoran Group Inc. d/b/a The Corcoran Group Real Estate ("The Corcoran Group") and by John J. Natoli Consulting Engineers and John J. Natoli ("Natoli") (collectively, the "Natoli Defendants").

**COUNTER-STATEMENT OF FACTS**

The Court is respectfully referred to Plaintiffs' Amended Complaint (Ex. 4 to the Declaration of Gayle Pollack, dated March 9, 2011 ("Pollack Decl.") and Ex. 2 to the Declaration of Michael Shanker, dated March 9, 2011 ("Shanker Decl.") and the Declaration of John Van Der Tuin, dated March 23, 2011 ("Van Der Tuin Decl.") and exhibits thereto.   In summary however:

This dispute arises out of the Sponsor Defendants' rehabilitation and conversion of a building in the Williamsburg area of Brooklyn from its former manufacturing use into residential use.   The units were sold pursuant to purchase agreements and an offering plan that contained detailed representations as to the quality and specifications of the construction – including a 41 page Specifications Report by Natoli as project architect, as to the compliance of the construction with all applicable codes and as to the Sponsor's obligation to obtain so-called "J-51" real estate tax abatements and exemptions for the purchasers' units.   In Certifications

---

[1] Defendants 72 Berry Street Holdings, L.L.C. and Meshberg Martin, LLC are also referred to as "Members." Matthew Landau, Justin Meshberg and David Martin are also referred to as "Principals."

included in the Offering Plan, the Sponsor Defendants and Natoli Defendants, for the express benefit of all persons to whom the units were offered, swore that these representations were true and complete.

After the purchasers moved into the building and elected a Board of Managers in the fall and early winter of 2009, however, the Board discovered that the promises and representations made by the defendants were untrue in that the as-built construction and design of the building failed to adhere to the construction as specified in the building plans, Specifications Report, Offering Plan and applicable building and construction codes. The Board discovered that their building contained numerous, dangerous and expensive construction and design defects, confirmed by a forensic architectural and engineering evaluation of the building. Sponsor has also, upon information and belief, failed to file for J-51 real estate tax benefits.

The Board's efforts to obtain compliance by the Sponsor with its promises and representations has been largely fruitless. While the Sponsor concedes the failure to comply with fire-safety codes, its remedial efforts have been ineffectual and it has continued to deny responsibility for other misrepresentations and code violations. It, instead, commenced an action in New York State Supreme Court, the day after a "standstill" agreement with the Board expired, seeking to blame the Board for its purported inability to access the building to perform fire-safety remediation.

This action was commenced by the Board for itself and as agent of the unit owners. Under the provisions of the Sponsor's purchase agreements, only the Board, and not unit owners, is permitted to bring actions for construction defects. In addition, pursuant to New York Real Property Law § 339-dd, the Board alone is allowed to bring actions related to the common elements or to conditions that affect more than one unit in the condominium. The Amended

2

Complaint asserts claims against the Sponsor Defendants and Corcoran under the anti-fraud provisions of the federal statute Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §1701, *et seq.*, a strict-liability act modeled after the Securities Act of 1933. It also asserts claims against the Sponsor Defendants and the Natoli Defendants for breach of promises made in the purchase agreements, against Natoli as third-party beneficiaries of the agreement between the Sponsor and Natoli as to design of the building, and against the Sponsor Defendants, The Corcoran Group and the Natoli Defendants for negligence and negligent misrepresentation.

For the reasons set forth below, the motions to dismiss the Amended Complaint should be denied.

## ARGUMENT

## MOTION TO DISMISS STANDARD

Rule "8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007), *citing and quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957).

On a Rule 12(b)(6) motion, all factual allegations are accepted as true, and all inferences are drawn in favor of the pleader.[2] *Mills v. Polar Molecular Corp.*, 12 F.2d 1170, 1174 (2d Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *quoting Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with

---

[2] The Sponsor Defendants also purport to rely on Rule 12(b)(1) though they offer no argument or authorities in support. A motion pursuant to Rule 12(b)(1) requires the same presumption of truth of the complaint and factual allegations as applies to a motion under Rule 12(b)(6). *United States v. Suffolk Cons. Co., Inc.*, No. 95 CIV 9363 (SS), 1996 WL 391875 (S.D.N.Y. July 12, 1996).

the allegations in the complaint." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007), *quoting*

*Bell Atlantic Corp.*, 550 U.S. at 562-64.

## I. THE DEFENDANTS' MOTIONS TO DISMISS THE ILSA CLAIM MUST BE DENIED WHERE THE BOARD HAS STANDING AND THE ILSA CLAIMS ARE CORRECTLY PLEADED

ILSA is a consumer-protection statute intended to protect real estate purchasers from

misrepresentation of material facts relating to undeveloped property. 15 U.S.C. § 1703(a), (b).

Its primary purpose is to insure that the material facts have been fully and accurately disclosed to

purchasers before making a decision whether to purchase. *Flint Ridge Dev. Co. v. Scenic Rivers*

*Ass'n*, 426 U.S. 776, *rev. denied*, 429 U.S. 875 (1976).[3] It is a strict liability statute, modeled

after the Securities Act of 1933. *Bodansky v. Fifth on the Park Condo, LLC*, Nos. 10-720-CV, *et*

*al*, 2011 WL 891028 (2d Cir. Mar. 15, 2011).

In their motions to dismiss, the defendants attack the Board's standing to assert claims

under ILSA. They also argue that the ILSA claim is not adequately pleaded because the Board

failed to sufficiently allege claims under Rule 9(b) and failed to allege proof of purchasers'

reliance. The defendants are wrong.

## A. The Board Has Standing To Bring An ILSA Claim Pursuant To RPL § 339-dd, Pursuant To The Offering Plan And Pursuant To Decisional Law Of New York

Defendant Sponsor's own purchase contracts require claims related to defects in the

construction of the condominium to be brought by the Board and not by purchasers.

Furthermore, New York statute and case law provides that claims related to the common

---

[3] Although the defendants do not deny that ILSA applies, they attempt to denigrate the application of ILSA to their defective condominium development by arguing that the statute is meant to protect purchasers of "swampland in Florida." This argument is specious because the defendants well know that there is substantial authority in this circuit applying ILSA to urban condominium developers, just like the defendants. *See, e.g., Bodansky v. Fifth on the Park Condo, LLC*, Nos. 10-720-CV, *et al*, 2011 WL 891028 (2d Cir. Mar. 15, 2011); *Griffith v. Steiner Williamsburg, LLC*, 09-CIV-9747 (AJP), 2010 WL 4970595 (S.D.N.Y. Dec, 13, 2010); *An v. Leviev Fulton Club, LLC*, 09-CV-1937, 2010 WL 3291402 (S.D.N.Y. Aug. 10, 2010); *Romero v. Borden East River Realty*, 09-CV-665 (ARR), 2010 WL 5758981 (E.D.N.Y. Mar. 11, 2010); *Beauford v. Helmsley*, 740 F. Supp. 201 (S.D.N.Y. 1990); *Bryan v. Amrep Corp.*, 429 F.Supp. 313 (S.D.N.Y. 1977).

4

elements of the condominium or to more than one unit must be brought by the Board. Defendants' arguments to the contrary, based upon inapposite cases[4] not involving such contractual and statutory provisions, are without merit.

> 1. *Real Property Law § 339-dd Confers Authority Upon The Board To Pursue Claims Affecting The Common Elements And More Than One Unit*

New York Real Property Law ("RPL") § 339-dd confers standing upon the Board to bring claims on behalf of unit owners. The statute provides, in relevant part:

> **Actions may be brought or proceedings instituted by the board of managers in its discretion,** on behalf of two or more of the unit owners, as their respective interests may appear, **with respect to any cause of action relating to the common elements or more than one unit.** (Emphasis added).

Courts that have interpreted this provision hold that *only* the board of managers may bring an action for claims relating to a building's common elements. In *Caprer v. Nussbaum*, 36 A.D.3d 176, 825 N.Y.S.2d 55 (2nd Dep't 2006), the Court held that the owner of an individual condominium unit lacks standing to assert a claim for damages affecting the common elements and that such claims are reserved for the board. The *Caprer* Court reasoned that reserving such standing for the board "makes sense as a practical matter" because otherwise

> "any recovery...by an individual unit owner would necessarily be limited to the owner's individual fractional interest, allowing such individual suits would likely lead to duplicative, piecemeal litigation of such issues...would also engender potential conflicts between suits initiated by the board of managers and those initiated by individual unit owners."

*Id.* at 178.

Similarly, in *Bd. of Mgrs. of the Chelsea 19 Condo. et al. v. Chelsea 19 Ass'n*, 73 A.D.2d 581, 905 N.Y.S.2d 8 (1st Dep't 2010), where the plaintiffs were the board of managers and

---

[4] Defendants rely on *Woodsmoke Ranch Ass'n v. Woodsmoke Resorts, Inc.*, No. 90 civ. 6975, 1991 WL 70924 (N.D. Ill. May 1, 1991) and *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467 (8th Cir. 1985), *cert. denied*, 475 U.S. 1082 (1986).

individual unit owners, the Court found that "individual unit owners lack standing to seek damages for injury to the building's common elements." *See also DiFabio v. Omnipoint Comm.*, 66 A.D.3d 635, 887 N.Y.S.2d 168 (2d Dep't 2009); *Residential Bd. of Mgrs. of Zeckendorf Towers v. Union Square-14th Street Ass'n.*, 190 A.D.2d 636, 594 N.Y.S.2d 161 (1st Dep't 1993) (board of managers had standing to bring claim against sponsor under § 339-dd "under which the Board of Managers of a condominium is empowered to maintain an action on behalf of the condominium owners with respect to 'any cause of action' relating to the 'common elements of [sic] more than one unit'").

In addition, RPL § 339-dd confers standing upon a board to assert an action for claims concerning "more than one unit." In *Tiffany at Westbury Condo. by Its Bd. of Mgrs. v. Marelli Dev. Corp.*, 40 A.D.3d 1073, 840 N.Y.S.2d 74 (2d Dep't 2007), the Court found that the board could bring a breach of limited warranty claim against the sponsor for defects in the HVAC system because the board had "raised triable issues of fact with respect to whether the alleged defects in the HVAC system occurred within the common elements of the building *or affected more than one unit.*" 40 A.D.3d at 1076, 840 N.Y.S.2d at 77 (emphasis added).

*2. The Offering Plan Requires The Board To Bring Claims On Behalf Of Individual Purchasers Against The Sponsor*

The Condominium's Offering Plan purports to contractually **require** that claims related to construction defects, such as are at issue in this case, be brought by the Board on behalf of unit owners. Page 62 in the "Rights and Obligations of Sponsor" section of the Offering Plan requires,

> **[O]nly the Board of Managers acting on behalf of the Unit Owners shall have the right to enforce the obligations of Sponsor set forth in this section [regarding defects].** Notwithstanding the foregoing, individual Unit Owners shall have the right to enforce Sponsor's obligations only if either (i) the Board of Managers fails to take reasonable action to enforce such

> obligations within 90 days following the giving of notice of such claim by a
> Unit Owner to the Board of Managers or (ii) the applicable statute of
> limitations with respect to any claim by a Unit Owner which would otherwise
> be enforceable by the Board of Managers will expire during such ninety (90)
> day period. (Emphasis added).

(Van Der Tuin Decl. at ¶ 11 and Ex. D).

It is disingenuous at best for the defendants to now argue that the Board lacks standing to

bring claims arising from their defective construction when, in the Offering Plan, they sought to

require the Board, and not the unit owners, to bring such claims.

This specific grant of authority in an offering plan is generally recognized by the courts

as granting standing to a board of managers. *See Tiffany at Westbury Condo., supra* (citing

terms of offering plan, as well as RPL § 339-dd, in granting board exclusive authority to bring

claims concerning common elements); *Devlin v. 645 First Avenue Manhattan Co.*, 229 A.D.2d

343, 645 N.Y.S.2d 476 (1st Dep't 1996) (enforcing term of purchase agreement that prohibited

purchaser from pursuing claims concerning common elements); *Kindel v. Kaufman and Broad*

*Homes of Long Island, Inc.*, 67 A.D.2d 938, 413 N.Y.S.2d 199 (2d Dep't 1979) (noting terms of

offering plan conferring authority on board but finding that they did not bar a representative

[class action] by unit owner).[5]

### 3. The Defects And Failures Alleged In The Amended Complaint Affect The Common Elements Or More Than One Unit

The Condominium Declaration that is incorporated into the Offering Plan describes the

Common Elements as "the entire Property including all parts of the Building...other than the

Units. The Common Elements include, but are not limited to, those rooms areas, corridors,

spaces and other parts of the Building...for the common use of the Units and the Unit Owners."

---

[5] If this Court were to conclude that the Board lacks standing, it should allow amendment to allow unit owners to be joined as plaintiffs, either *en masse* or in a class representative capacity. *See also* Point I(B), *infra*.

(Van Der Tuin Decl. at ¶ 7; Ex. F to Van Der Tuin Decl.).  The Common Elements include *inter alia*, the building's foundations and columns; walls including the portions of the walls and partitions dividing the Units from exterior walls and the exterior walls; windows; common mechanical and electric spaces; landings and stairs; lobbies, the main roof, roof slab and all equipment thereon; roof drains and exhaust ducts and fans.  *Id.*

The construction defects at issue all affect the Common Elements or more than one unit, and the failure to obtain J-51 real estate tax benefits affects all of the units.  The Board has standing granted by statute and contract to pursue these claims.

**B.      Individual Unit Owners Are Not Necessary Parties In This Action And Even If They Are Necessary Parties, The Proper Remedy Is Joinder And Not Dismissal Of This Action**

The Sponsor Defendants' argument urging this Court to dismiss this action for the Board's failure to join the individual purchasers as necessary parties under Rule 19(a)(1) is a disingenuous corollary to its argument regarding standing.  As shown in Point I(A), the suit is brought by the Board and not by the individual unit owners because the Sponsor's own contract prohibits unit owners from bringing suit arising out of construction defects.  The Sponsor, effectively, declared that the unit owners *should not* be parties to such claims.  Furthermore, as demonstrated above, the Board has contractual and statutory authority to bring all of the claims in this suit – both those relating to construction defects and those relating to J-51 real estate tax benefits because they affect the common elements and because they affect more than one unit. The Amended Complaint specifically does not seek to assert claims that are unique to a single unit.  (Amend. Compl. at ¶¶ 5, 43-57).   Individual purchasers are not necessary parties to the claims and issues in this case.

8

If, however, this Court determines that the individual unit owners are necessary parties that must be joined under Rule 19(a)(1), the proper remedy under Rule 19(a)(1)(B) is not dismissal, but a court order requiring the unit owners to join as plaintiffs or allowing the defendants to join them as involuntary plaintiffs. Rule 19(a)(1)(B) provides:

> If a person has not been joined as required, the court must order that person be made a party. A person who refuses to join as a plaintiff may be made either a defendant, or in a proper case, an involuntary plaintiff.

*See, e.g.,* Comment to Rule 19 ("If a person...is amenable to service of process and his joinder would not deprive the court of jurisdiction...the court should order him brought into the action); *Kamhi v. Cohen*, 512 F.2d 1051 (2d Cir. 1975) (because Rule 19(a) requires a court to order an indispensable party be made a party, district court was ordered to grant party leave to amend the complaint); *Assoc. Dry Good Corp. v. Towers Fin. Corp.*, 920 F.2d 1121 (2d Cir. 1990) (Court could not in equity and good conscience dismiss the suit for failure to join the party when the party could be joined).

## C.    Neither Proof Of Reliance Nor Compliance With Rule 9(b) Is Required Under ILSA

Defendants seek to rewrite ILSA to include a reliance element consciously omitted by Congress. ILSA is a strict liability statute that does not require proof of fraudulent intent or reliance. In a decision this month, *Bodansky v. Fifth on the Park Condo, LLC*, Nos. 10-720-CV, *et al.*, 2011 WL 891028 at *4 (2d Cir. Mar. 15, 2011), the Second Circuit reasoned that "[ILSA] is based on the Securities Act of 1933 and many of its sections are identical to those in the 1933 act...[ILSA] provide[s]...liberalized fraud remedies."[6] The Court noted,

---

[6] On page 9 of the Sponsor Defendants' memorandum of law, the Sponsor Defendants argue that because ILSA is based on securities law that includes reliance as an element, ILSA must also require reliance. This is incorrect. ILSA is indeed modeled after the Securities Act of 1933. *See Bodansky, supra.* Wealth of case law concludes that because the 1933 Securities Act does not include a scienter or reliance requirement, Congress intended an identical interpretation for ILSA. *Id.; Husted v. Amrep. Corp.*, 429 F.Supp. 298 (S.D.N.Y. 1977); *Ackman v. Merchants Mort'g & Trust Corp.*, 645 P.2d 7 (Sup. Ct. Colo. 1982).

> Congress passed ILSA at a time when mail fraud statutes and common law fraud doctrine appeared ineffective to check the abuses in the land sales industry, in part because both required plaintiffs to show reliance and quantify damages as a result of defendants' material misrepresentation or omission.

*Id.* at \*11.  In rejecting the developer's argument that a plaintiff must show elements of common law fraud such as reliance and intent, the Court held, "...grafti[ing] such a requirement onto ILSA would disregard a key reason Congress enacted ILSA." *Id.*

Other courts have reached the same conclusion. *See, e.g., Husted v. Amrep Corp.*, 429 F.Supp. 298, 310 (S.D.N.Y. 1977),  ("intent to defraud is not an element of suit...Nor need plaintiff prove reliance to recover for violations of § 1709(a)"); *Bryan v. Amrep Corp.*, 429 F.Supp. 313 (S.D.N.Y. 1977), (liability under §1709 does not depend upon reliance by the plaintiff on untrue statements made by defendants); *Disandro v. Makahuena Corp.*, 588 F.Supp 889, 893 (D.Haw. 1984) ("[T]he legislative intent of ILSA was to create an open, honest condominium market.  To require individual purchasers to prove reliance would thwart that legislative goal"); *Gibbes v. Rose Hill Plantation*, 794 F.Supp. 1327 (Dist.Ct. S.C. 1992) (no reliance required for claim under § 1703(a)(2)(B)); *Kenneally v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174 (SD Ca. 2010) (purchasers' suit under § 1703(a)(2)(B) did not require reliance); *Ackman v. Merchants Mt'g & Trust Corp.*, 645 P.2d 7 (Colo. 1982) (§ 1703(a)(2)(C) claims require no showing of scienter or reliance); *Panaguinas v. Aldon Co. Inc.*, 2006 WL 2568210 (Dist.Ct. N.D. Ind. Sept. 5, 2006) ("[p]laintiffs do not need to prove actual fraud in order to recover for violations under the Act.").

Nor does Rule 9(b)'s particularity requirement have any application here.  As Judge Lasker reasoned in *Husted*,

> It is doubtful that Rule 9(b) even applies [to ILSA claims].  Section 1709(a) is modeled after § 11 of the Securities Act of 1933, 15 U.S.C. § 77l.  Intent to deceive or defraud is not an element of suit under § 11, nor does it appear to be an

element here...In short, § 1709(a) does not involve fraud or fraud-like behavior. [It has been] held that the requirements of Rule 9(b) do not apply to claims under § 11 of the Securities Act, and [that] reasoning appears applicable to claims under § 1709(a) as well.

*Id.* at 310.

Even if Rule 9(b) applied to ILSA claims, its requirements are met by the allegations in the Amended Complaint. The specific and distinct role of each defendant is alleged. (Am. Compl. at ¶¶ 61-64). It is alleged that Sponsor is a "developer" and that Members, Principals and The Corcoran Group are either a "developer" or "agent" under ILSA. *Id.* It is alleged that the Sponsor, Members and Principals were responsible for the preparation of the Offering Plan, marketing materials and sales brochures for the Condominium. (Am. Compl. ¶¶ 17, 22-24, 72). It is alleged that The Corcoran Group is the Sponsor's exclusive sales agent that distributed the Offering Plan, marketing materials and sales brochures for the Condominium on behalf of the Sponsor, Members and Principals, marketed the units and offered the units for sale. (Am. Compl. at ¶¶ 19-24, 73).

The specific wrongful and misleading statements under ILSA are alleged. It is alleged that the Offering Plan contained Certifications by the Sponsor Defendants and the Natoli Defendants that stated the Certifications would made upon penalty of perjury *for the benefit of all persons to whom this offer is made."* (Emphasis added.)(Am Compl. at ¶¶ 31-39; Van Der Tuin Decl. at ¶ 4; Ex. 2 to Pollack Decl.). It is alleged that the Offering Plan, marketing materials and sales brochures contained descriptions concerning the construction and features of as-built Condominium and Units. (Am. Compl. at ¶¶ 27-30, 70-23; Van Der Tuin Decl. at ¶¶ 4-8; Ex. C to Van Der Tuin Decl.). It is alleged that the Offering Plan also contained representations regarding the building's eligibility to obtain a Certificate of Occupancy and J-51 real estate tax benefits (Am. Compl. at ¶¶ 44-57; Van Der Tuin Decl. at ¶¶ 12-13; Ex. E to Van

11

Der Tuin Decl.).   It is alleged that the Sponsor, Members and Principals certified that the Offering Plan was "complete and accurate" and did "not contain any untrue statement of material fact," and did "not contain any fraud or deception." (Am. Compl. at ¶ 31; Van Der Tuin Decl. at ¶ 4; Ex. 2 to Pollack Decl.).  The manner in which these statements are untrue and misleading is alleged.  (Am. Compl. at ¶¶ 21-22, 43-57, 69-73).

These allegations stating the involvement and role of each defendant in the alleged scheme of misconduct are sufficient to meet the requirements of Rule 9(b).  *See Husted*, 429 F.Supp. at 311.  "At this stage of the proceedings, before discovery has occurred, it would be unduly burdensome to impose a requirement of more detailed pleadings..." *Id.*

**D.     The Amended Complaint Sufficiently Alleges Misrepresentations And Omissions Of Material Facts Under ILSA**

The Sponsor Defendants and The Corcoran Group contend that the Board has failed to allege that the Offering Plan contained misrepresentations of fact that were not true at the time they were made.  Defendants' contentions are without merit because ILSA is a strict liability statute that requires no showing of intent to deceive.  "Congress enacted a strict liability [statute]...to allow unsophisticated purchasers to enforce their rights." *Bodansky*, 2011 WL 891028 at *11.  *See also 200 East Partners v. Gold*, 997 So.2d 466, 469 (Fla. 4th D.C.A. 2008) ("ILSA is a strict liability statute enacted for the purpose of protecting the public and should be liberally construed in favor of the public.")

Under ILSA, a plaintiff need only establish that material statements or representations were made by the developer or sales agents to purchasers that were not true, even if the statements were innocent or unintentional. *Gibbes*, 794 F.Supp. at 1326.  In *Kenneally, supra*, a case with strikingly similar facts to this one, developers made untrue statements in the Offering Plan, purchase agreement, website and other materials regarding the square footage of the units

12

in the condominium.  After construction was completed, purchasers discovered that the actual size of their unit was smaller than promised.  The Court found that allegations in the complaint that defendants misstated the square footage of the units in their sales materials prior to the completed construction of the building was sufficient to survive a motion to dismiss, without regard to defendants' intent to deceive.  In *Gibbes, supra*, the court found that oral statements made prior to the time construction was completed that an Equestrian Center would be built on the property were actionable under ILSA regardless of defendants' intent.  Finally, in *Ackman, supra*, the court found that defendants' representations that the raw land would be improved by utilities and recreational amenities were material representations actionable under ILSA that did not require intent to defraud by defendants.

**E.     Members And The Corcoran Group May Be Held Liable As Developers And Agents Under ILSA**

Member defendants and The Corcoran Group argue that the ILSA claims should be dismissed against them because they are not entities that fall within its purview.  They are wrong. ILSA takes an expansive approach to the persons or entities that who may be liable.  Developers, builders, real estate agents, marketing firms or management companies who do not normally consider themselves as "developers" or "agents" are often subject to ILSA.  "Developer" and "agent" are broadly defined in the statute, and include all persons directly or indirectly involved in the selling efforts.  A "developer" is any person who "directly or indirectly sells or leases...or offers...or advertises for sale..." any lots.  15 U.S.C. § 1701(5).  An agent is any person "who represents, or acts on behalf of, a developer in selling" any lots.  15 U.S.C. § 1701(6).

ILSA's "directly or indirectly" language reaches managing members, principals, directors and other personnel of the developer and owner entities, like Member defendants.  *See Bodansky, supra* (managing members of a sponsor may be liable for ILSA violations); *Sea Shelter IV, LLC*

13

*v. TRG Sunny Isles V, Ltd., TRG Sunny Isles V, LLC*, 08-21767-CIV, 2009 WL 692469 (S.D. Fla. Mar. 17, 2009) (general partner of sponsor may be liable under ILSA); *Kemp v. Cost Control Mktg. and Sales Mgmt. of Virginia, Inc.*, 790 F.Supp. 1275 (W.D. Va. Dist. Ct. 1992) (corporate developer and its officers liable for violations of ILSA); *Hester v. Hidden Valley Lakes, Inc., et al.*, 495 F.Supp. 48 (N.D. Miss. 1980) (officers and stockholders of developer were held liable under ILSA even though they were not engaged in selling efforts where evidence showed that they had sufficient control over sales policy of sponsor corporation); *Husted, supra* (corporate subsidiary, officers and directors of sponsor may be liable under ILSA).

Similarly, real estate brokers, like The Corcoran Group, are subject to ILSA claims. *See, e.g.*, HUD Guidelines, 61 Fed. Reg. at 13602 ("brokers selling lots as an agent for any person who is required to comply with the requirements of ILSA for those sales...may be required to comply with the requirements of the Act"); *De Luz Ranchos Invest., Ltd. v. Coldwell Banker 7 Co.*, 608 F.2d 1297 (9th Cir. 1979) (entity who acted as selling agent for developer may be liable for ILSA claims); *Kemp, supra* (sales agents of sponsor liable for ILSA violations); *Gibbes, supra* (sales agent may be liable under ILSA).

The single case cited by The Corcoran Group is inapposite. *Santidrian v. Landmark Custom Ranches, Inc.*, No. 10-11375, 2010 WL 506256 (11th Cir. Dec. 13, 2010) involved not an entity like The Corcoran Group but an employee who had no role in the selling of the property.

## II.   THE COURT SHOULD RETAIN JURISDICTION AND REFRAIN FROM STAYING THIS ACTION IN FAVOR OF THE PENDING STATE COURT ACTION BECAUSE THE STATE COURT ACTION IS NOT CONCURRENT WITH THIS ACTION AND THE *COLORADO RIVER* FACTORS MILITATE AGAINST ABSTENTION

The Sponsor Defendants contend that the Court should stay this action in favor of a pending state court proceeding (the "State Court Action") pursuant to the *Colorado River*

abstention doctrine.  The contention is without merit.  The state and federal actions at issue here are not "concurrent" in the manner that is predicate to the *Colorado River* factors and, even if they were, the factors tip heavily against abstention.

Federal courts have "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236 (1976). "Abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it...*[a]bdication of the obligation can be justified under this doctrine only in...exceptional cases.*"  *Id.* at 813, 1236 (citations omitted; emphasis added).  The task of a court under the *Colorado River* standard is not to determine whether there is some substantial reason for the exercise of federal jurisdiction.  Rather, the court must ascertain "whether there exist exceptional circumstances that justify the surrender of federal court jurisdiction."  *Village of Westfield, N.Y. v. Welch's*, 170 F.3d 116, 124 (2d Cir. 1999).  "There is little to no discretion to abstain in a case which does not meet traditional abstention requirements."  *Id.* at 125 (citations omitted).

Here, the two proceedings are not concurrent.  They involve different parties, different subject matters and different forms of relief.  The State Court Action involves the Sponsor as plaintiff and the Board as defendant.[7]  (Ex. 1 to Pollack Decl.).  In this case, there are an additional eight parties against whom separate and independent claims are pleaded.  The State Court Action presents very narrow claims, one of which seeks injunctive relief for access to the building to perform limited scope of fire-safety work, and the other of which seeks a declaration

---

[7] On March 17, 2011, five months after commencing the State Court Action and in a transparent effect to block this Court's jurisdiction, the Sponsor amended its state court complaint to change the theory of its case and to add 39 individual unit owners as defendants. The state court action will now be stalled until process is served on the 39 new defendants and they can appear and move to dismiss. (Ex. B to Van Der Tuin Decl.).

that the Board has wrongfully blocked access for remedial work.[8]  *Id.*  By contrast, this case includes nine claims based not only upon construction deficiencies but also for failure to obtain tax abatement and exemptions and seeks a variety of remedies, including offers of rescission of purchase agreements, specific performance of promised construction and/or money damages. (Am. Compl. at ¶¶ 58-179).  Accordingly, abstention has no role here.  *See Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988) (some overlap not enough to make state and federal actions concurrent).

Even if the *Colorado River* factors were applied, abstention is improper.  The six factors under *Colorado River*:  (1) the assumption of jurisdiction over a res; (2) inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which the actions were filed; (5) whether state or federal law supplies the rule of decision and (6) whether the state court proceeding will adequate protect the rights of the party seeking to invoke the jurisdiction.

The Sponsor Defendants concede that the first two factors weigh against abstention because there has been no assumption of jurisdiction over a res and the federal court is just as convenient as the state court.[9]  The third factor, the order of jurisdiction does not turn exclusively on the sequence in which the cases were filed, but rather on how much progress has been made in the two actions.  *Village of Westfield, supra.*  There has been considerable progress in this case.  Within three months, all parties have appeared and have served discovery demands, with documents to be exchanged in early May, pursuant to this Court's scheduling order.  The defendants have moved to dismiss, and the parties are scheduled for another conference with the Court on March 30, 2011.  In the State Court Action, by comparison, there has been no progress

---

[8] The Sponsor's repeated claims that the Board has blocked access for remedial work is false and disingenuous. Although irrelevant to the Sponsor Defendants' motion, the Board has consistently sought remedial work and cooperated as to those few items of work the Sponsor has conceded it must remediate.
[9] *See* p. 14 of the Sponsor Defendants' Memorandum of Law.

since it was commenced in November, 2010. There has been no discovery and the Sponsor has now filed, but yet not served, an amended complaint that changes the theory of their case, names 39 new defendants and will result in months of delay while defendants are served and motions are made. This factor weighs against abstention, and at best, is neutral.

Fourth, this Court should retain jurisdiction to avoid piecemeal litigation. All of the parties and claims are before this Court, and this Court can adequately adjudicate all of the claims. Fifth, abstention is disfavored when federal law, like the ILSA claim, is present. Sixth, the State Court Action will not adequately protect the rights of the Board. Not all of the parties or the claims are before the state court. In addition, the federal courts of New York have had more extensive experience with ILSA while the state courts of New York have had limited or no experience with it. *See, e.g., Bodansky v. Fifth on the Park Condo, LLC*, Nos. 10-720-CV, *et al*, 2011 WL 891028 (2d Cir. Mar. 15, 2011); *Griffith v. Steiner Williamsburg, LLC*, 09-CIV-9747 (AJP), 2010 WL 4970595 (S.D.N.Y. Dec, 13, 2010); *An v. Leviev Fulton Club, LLC*, 09-CV-1937, 2010 WL 3291402 (S.D.N.Y. Aug. 10, 2010); *Romero v. Borden East River Realty*, 09-CV-665 (ARR), 2010 WL 5758981 (E.D.N.Y. Mar. 11, 2010); *Beauford v. Helmsley*, 740 F.Supp. 201 (S.D.N.Y. 1990); *Bryan v. Amrep Corp.*, 429 F.Supp. 313 (S.D.N.Y. 1977). In addition, the state court judge has already expressed his inclination, if the case is not dismissed, to refer it to a non-judicial special referee or to another judge.

## III. EVEN IF THE ILSA CLAIM IS DISMISSED, JUDICIAL ECONOMY, CONVENIENCE AND FAIRNESS REQUIRE THIS COURT TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS

Even if the Board's ILSA claim were dismissed, this Court should exercise supplemental jurisdiction over the remaining eight state law claims.

Under 28 U.S.C. § 1367(c)(3), a district court, may at its discretion, exercise supplemental jurisdiction over state law claims *even where it has dismissed all claims over which it had original jurisdiction.* (Emphasis added). Courts in this circuit have routinely exercised supplemental jurisdiction over state law claims even after the plaintiff's federal claims were dismissed. *See Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998) (court's retention of jurisdiction of state law claims upheld even after federal claims were dismissed); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182 (2d Cir. 1996) (no abuse in discretion where district court exercised supplemental jurisdiction after dismissal of federal claim).

This is especially true where the principles of "judicial economy, convenience and fairness to litigants" tip in favor of pendent jurisdiction. *Id.* at 1191. The court in *Raucci v. Town of Rotterdam*, 902 F.2d 1050 (2d Cir. 1990) applied these principles and exercised jurisdiction in light of the fact that discovery had been completed, the court had decided three dispositive motions, and the state law claims involved only settled principles, rather than legal questions that were novel.

The reasoning employed in *Raucci, Marcus* and *Nowak* applies here. The parties are already well into the discovery process and the exchange of documents will be completed within a few short weeks. Requiring the parties to start the case over again in state court will only waste judicial resources and inconvenience the litigants. In addition, the state law claims presented are not novel and can be fully adjudicated by this Court.

## IV.  THE BOARD'S STATE LAW CLAIMS ARE PROPERLY ASSERTED

### A.    The Board May Properly Plead Alternative Theories Of Recovery At This Stage Of The Proceedings

The defendants seek dismissal of the Board's claims for negligence and negligent misrepresentation (even while defendant Meshberg Martin LLC claims it has no contractual

liability) on the grounds that these claims are redundant of the breach of contract claim. Until the Board has had the opportunity to confirm through appropriate discovery the precise contours of the defendants' scheme, the Board may properly plead alternative theories of recovery.

Rule 8(e)(2) permits the pleading of "two or more statements of a claim, even within the same count, regardless of consistency.'" *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999). *Adler* holds that Rule 8(e)(2) does not require that different theories of the same claim need be expressly pleaded in the alternative on a motion to dismiss. *Id. See also Dobbs v. Dobbs*, 2008 WL 3843528 (S.D.N.Y. Aug. 14, 2008). Dismissal of alternative claims without discovery violates the wide latitude 8(e)(2) provides a pleader in framing the right to recover and to obtain appropriate discovery. *See Nat'l City Comm. Capital Co. v. Global Golf, Inc.*, No. 09-CV-0307 (JFB)(AKT), 2009 WL 1437620 (May 20, 2009) (citations omitted).

The Sponsor Defendants have not admitted enforceability of the contracts, that the Member and Principal defendants have any contractual obligations or that contracts were breached by the defective construction or failure to obtain tax abatement benefits. Unless or until they do so—and Meshberg Martin expressly will not do so—the Board has the option and the alternative of pursuing its claims that the defects and failures resulted from defendants' negligence or negligent misrepresentations in carrying out the promises made in the purchase documents. Accordingly, the Board must be allowed to plead both tort and breach of contract claims.

**B.   The Board Has Viable Causes Of Action For Breach Of Contract**

*1.   The Board Has Properly Pleaded a Claim for Breach of Contract Against The Members and Principals*

The Sponsor Defendants attack the Board's breach of contract claim against the Member and Principal defendants because there is purportedly no independent contract between them and

the unit owners. They are wrong because the Board has alleged that Members and Principals entered into an agreement with unit owners when they signed the Certification that was part of the Offering Plan expressly incorporated in the Purchase Agreements. (Am. Compl. at ¶¶ 31-32, 94-95; Van Der Tuin Decl. at ¶ 4).

To state a claim in for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir 1996). Even where discovery and summary judgment motions may ultimately determine that no agreements or contracts existed, a breach of contract claim survives a 12(b)(6) motion so long as the complaint provides a short and plain statement. *Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F. Supp. 2d 193 (E.D.N.Y. 2001) (denying motion to dismiss breach of contract action); *Campo v. 1st Nationwide Bank, FN*, 857 F.Supp. 264 (E.D.N.Y. 1994) (same); *Posner v. Minnesota Mining and Manuf. Co. Inc.*, 713 F.Supp. 562 (E.D.N.Y. 1989).

In this case, the Amended Complaint alleges that the Certifications executed by defendant Members and Principals (except Member Meshberg Martin)[10] were contractual agreements with each unit owner, that the unit owners for whom the Board sues satisfied their obligations under the Agreement, that Members and Principals breached their obligations under the Agreement and that the Board is entitled to judgment on behalf of the Purchasers against the Members and Principals. (Am. Compl. at ¶¶ 31-32, 94-95). The Certification by Members and

[10] The Certification was incomplete and omitted a signature by Member Meshberg Martin even though the Certification itself demands a signature by Member Meshberg Martin since the Certification declares, "[W]e are the Sponsor, members of Sponsor and the Principals of the Sponsor..." Meshberg Martin as a member of Sponsor was required to have signed the Certification and its mistake should not absolve it of liability.

20

Principals was made "for the benefit of all persons to whom this offer is made." (Am. Compl. ¶¶ 32, 94; Ex. 2 to Pollack Decl.).

Members and Principals swore that the terms of the Offering Plan were "complete, current and accurate;" did "not omit any material fact...or contain any untrue statement of a material fact;" and did "not contain any fraud, deception, concealment, suppression, false pretense." (Am. Compl. at ¶¶ 31, 94; Van Der Tuin Decl. at ¶ 4).   The Board alleges each Purchaser complied with his or her obligation under the Agreement by paying the purchase price and closing on his or her Unit.   (Am. Compl. at ¶¶ 26, 41, 96-97).

The Members and Principals breached the Agreement by permitting the Condominium to be constructed contrary to the express promises in the Offering Plan; by delivering the Condominium with design and construction defects and by failing to use best efforts obtain J-51 real estate benefits.   (Am. Compl. ¶¶ 43-57, 98).   Lastly, the Board has alleged that the Members' and Principals' various breaches have caused injury to the Board and Purchasers and caused the Board and Purchasers to incur engineering, architectural, consultant and construction fees, Moving and Improvement Costs and non-abated real estate tax bills.   (Am. Compl. ¶¶ 48-49, 51, 56-57, 99-101).

New York courts have consistently sustained breach of contract claims against members and principals of a sponsor on such certifications.   *See Bd. of Mgrs. of Marke Gardens Condo. v. 240/242 Franklin Ave. LLC*, 20 Misc. 3d 1138(A), 872 N.Y.S.2d 689 (Sup. Ct. Kings Co. 2008) (breach of contract claim against member of sponsor sustained based upon his signature on the certification); *Tiffany at Westbury Condo. by Its Bd. of Mgrs., supra* (allowing breach of contract claims against principals of sponsor); *Caboara v. Babylon Cove Dev., LLC*, 54, A.D.3d 79, 862

21

N.Y.S.2d 535 (2d Dep't 2006) (sustaining breach of contract claims against members of sponsor on a motion to dismiss when complaint stated cause of action).

Whether the claim is ultimately successful or duplicative of other claims is immaterial at this stage of the proceeding. What matters is that Members and Principals have contract law liability to purchasers based upon their certifications in offering plans and the Members and Principals have been given sufficient notice of the nature of the claim raised against them to be able to present a defense. The Board has satisfied its burden in the pleadings.[11]

### 2. The Board Has Properly Pleaded A Claim For Breach of Contract Against The Natoli Defendants

Likewise, the Board has also properly alleged breach of contract claims against the Natoli Defendants. The Board alleges that there are two agreements at issue—the Natoli Agreement[12] and the Certification signed by the Natoli Defendants. (Am. Compl. at ¶¶ 3-39, 140, 151-152; Van Der Tuin Decl. at ¶¶ 4-5; Ex. 2 to Pollack Decl.). The Natoli Agreement is the agreement between the Sponsor and the Natoli Defendants by which, upon information and belief, the Natoli Defendants had the responsibility for the design and oversight of the construction of the Condominium as to which the Board alleges the Board and unit owners are third-party beneficiaries. (Am. Compl. at ¶ 35, 36, 140-141, 144; Van Der Tuin Decl. at ¶ 6). The Certification is the document signed by the Natoli Defendants for the express benefit of the Board and unit owners that the Specifications Report it prepared and that was included in the

---

[11] The cases cited by the Sponsor Defendants are distinguishable from the present case. The Court granted dismissal of condominium board's breach of contract action in *Tutora v. Siegel*, 40 A.D.3d 227, 833 N.Y.S.2d 385 (1st Dep't 2007) because, unlike the here, the pleadings failed to allege the existence of a contract. In *Hicks v. Warren*, 2007 WL 4394823 (N.Y. Sup. Kings Co. Dec. 18, 2007), the plaintiffs made no allegations that the certification signed by the members and principals was an agreement separate and apart from the purchase agreement signed by the sponsor. Moreover, that case was dismissed on a motion for summary judgment that required the Court to adjudicate the merits of the claims.

[12] A copy of the Natoli Agreement has not yet been produced in discovery.

Offering Plan was complete and accurate and did not contain any fraud or misstatements of fact. (Am. Compl. ¶¶ 37-38, 151-152; Van Der Tuin Decl. at ¶ 4).

New York courts have repeatedly upheld third-party beneficiary breach of contract claims by a condominium against a design professional. In *Bd. of Mgrs. of Alfred Condo. v. Carol Mgmt.*, 214 A.D.2d 380, 382, 624 N.Y.S.2d 598, 600 (1st Dep't 1995), the Court found that where the condominium offering materials highlighted the architect's participation in the project, the "purchasers became vested of third-party rights to enforce the terms of the construction manager's contract." Similarly, in *Bd. of Mgrs. of the Astor Terrace Condo. v. Schuman, Lichtenstein, Claman & Efron*, 183 A.D.2d 488, 583 N.Y.S.2d 398 (1st Dep't 1992),[13] the Appellate Division dismissed the design professional's pre-answer motion to dismiss breach of contract claims holding, "[a]s design and construction failures affect a condominium unit owner's standards of living and ability to sell, it cannot be heard that these condominium unit owners [plaintiffs] were merely an incidental rather than an intended beneficiary of the contract." *Id.* at 489. *See also Monarch Owners Comm. v. Abrams*, N.Y.L.J. Feb. 7, 1989, p. 21, co. 4 (Sup. Ct. N.Y. Co. 1989) (trial court refused to dismiss defendant's third party beneficiary contract claim as it was "cognizable in law and pass[ed] legal muster").

Similarly, in *Bridge Street Homeowners Ass'n v. Brick Condo. Dev., LLC*, 18 Misc.3d 1128(A), 856 N.Y.S.2d 496 (Sup. Ct. Kings Co. 2008), the Court sustained a condominium board's claims against an engineer because the certification signed by the engineer that was "made for the benefit of all persons of [sic] whom this offer is made" gave rise to a relationship approaching privity. *See also Bd. of Mgrs. of Marke Gardens, supra* (breach of contract claim

---

[13] It is anticipated that the Natoli Defendants will argue that a parallel court in the First Department disagreed with *Astor Terrace*'s holding in *Sykes v. RFD Third Ave. 1 Assoc., LLC*, 67 A.D.3d 162, 884 N.Y.S.2d 745, (N.Y.A.D. 1 Dept. Sep 08, 2009). *Sykes* is distinguishable from *Astor Terrace* and the case at bar because the complaint in *Sykes* failed to sufficiently allege facts to support negligence and negligent misrepresentation. *Astor Terrace* has not been overruled by the Court of Appeals and therefore remains good law.

by condominium board sustained because architect's certification gave rise to a relationship approaching privity).

Here, it is alleged that the Natoli Defendants entered into the Natoli Agreement by which the Natoli Defendants agreed to, *inter alia*, prepare the Specifications Report, review the building plans, provide design and building specifications and supervise the proper completion of the Condominium and Units. (Am. Compl. at ¶¶ 35-36, 140-141; Van Der Tuin Decl. at ¶ 6). It is also alleged that the Natoli Defendants knew that the Condominium and Units were being constructed for the benefit of Purchasers and the Board, and that Purchasers and the Board are third-party beneficiaries of the Natoli Agreement. (Am. Compl. at ¶¶ 36, 142, 144; Van Der Tuin Decl. at ¶ 6).

It is also alleged that contractual obligations arose from the Certification by the Natoli Defendants in the Offering Plan that was made "for the benefit of all persons to whom this offer is made" and by which they swore that the terms of the Specifications Report prepared by them that described the construction and design of Condominium was accurate and complete. (Am. Compl. at ¶¶ 37-38, 152-153; Van Der Tuin Decl. at ¶¶ 4-5). The Certification stated that the Specifications Report, *inter alia*, set forth the physical condition of the Condominium and Units as they "will exist upon completion of construction;" did not "omit any material fact...or...contain any untrue statement of a material fact;" did "not contain any fraud, deception, concealment or suppression." (*Id.*) The Certification further stated that the Specifications Report was "incorporated into the offering plan so that prospective purchasers may rely on [it.]" (*Id.*; Ex. 2 to Pollack Decl.). It is alleged that this is an Agreement between Purchasers and the Natoli Defendants. (Am. Compl. at ¶¶ 38, 152).

The Board alleges each Purchaser complied with his or her obligation under the Agreement by paying the purchase price and closing on his or her Unit. (Am. Compl. at ¶¶ 141, 153-154). The Board has alleged that the Natoli Defendants breached both the Natoli Agreement and Agreement by failing to properly supervise the construction of the Condominium and Units and permitting them to be constructed with the design and construction defects. (Am. Compl. at ¶ 155). Lastly, the Board has alleged that the Natoli Defendants' breaches have caused injury to the Board and Purchasers and caused the Board and Purchasers to incur engineering, architectural, consultant and construction fees, Moving and Improvement Costs and non-abated real estate tax bills. (Am. Compl. ¶¶ 156-159).

Consequently, the Amended Complaint adequately pleads each of the required elements for breach of contract and the Natoli Defendants' motion to dismiss must be denied.[14]

## C.     The Board's Tort Claims Are Not Barred By The Martin Act

The Sponsor Defendants contend, at Point V(A) of their Memorandum of Law that the Board's tort claims (but not their ILSA or breach of contract claims) are barred by New York's Martin Act. They rely principally, and erroneously, on the New York Court of Appeals' decision in *Kerusa Co. LLC v. W10Z/515 Real Estate Limited Partnership,* 12 N.Y.3d 236, 879 N.Y.S.2d 17 (2009). The issue of Martin Act preclusion of common law claims has been the subject of frequent litigation and conflicting decisions. The *Kerusa* opinion is factually distinguishable and expressly did not decide the issue raised by the present case. The consensus of the New York State Appellate Divisions that have decided the issue, the New York State Attorney General and

---

[14] The Natoli Defendants' reliance on *Dunlop Dev. Corp. v. Spitzer*, 26 A.D.3d 180, 810 N.Y.S.2d 28 (1st Dep't 2006) and *Joseph v. NRT Inc.*, 18 Misc.3d 296, 853 N.Y.S.2d 481 (Civ. Ct. N.Y. Co. 2007) is misplaced. *Dunlop Dev.* does not bear in any way upon the issues here because it deals with a purchaser's appeal to regain the down payment awarded to the sponsor as a result of the purchaser's default. Similarly, the *Joseph* case is irrelevant to the motions because that case was dismissed on a motion for summary judgment that required the Court to adjudicate the merits of the claims. The Letter of Completion (attached as Ex. 2 to Shanker Decl.) does not resolve any issues of fact and at the very least, the Board is entitled to conduct discovery.

25

the decisions of the federal courts that properly follow the state courts' decisions of this state law issue is that claims such as the Board's in this case are not precluded by the Martin Act.

*Kerusa* decided that claims of common law fraud based upon allegations that the defendant condominium sponsor had *omitted* material facts in the condominium offering plan are simply "back door" attempts to assert a private cause of action to enforce the Martin Act's disclosure requirements. The Martin Act, unlike ILSA, contains no private cause of action. The Court pointedly noted that it was *not* deciding whether affirmative misstatements of information required to be included in an Offering Plan by the Martin Act or its regulations could give rise to a common law claim of fraud. *Id.* at n. 5. *Kerusa* is therefore legally and factually inapposite. It addressed solely common law fraud claims, which are not asserted in this case, and it involved *omissions* rather than affirmative misrepresentations, as in the present case.

Furthermore, contrary to the Sponsor Defendants' contentions, New York Supreme Court Appellate Division decisions, briefs of the New York Attorney General, and federal district court decisions that properly follow state law on this state law issue that have addressed the issue in this case conclude that common law claims such as the Board's in this case are not precluded by the Martin Act. *See, e.g., Assured Guar. (UK) Ltd. V. J.P. Morgan Inv. Mgmt. Inc.,* 80 A.D.3d 293, 915 N.Y.S.2d 7 (1st Dep't 2010); *CMMF, LLC v. J.P. Morgan Inv. Mgmt. Inc.,* 78 A.D.3d 562, 915 N.Y.S.2d 2 (1st Dep't 2010); *Caboara, supra; Bd. of Mgrs. of Marke Gardens Condo., supra; Scalp & Blade, Inc. v. Advest, Inc.,* 281 A.D.2d 882 (4th Dep't 2001); *Rasmussen v. A.C.T. Env't Servs., Inc.,* 739 N.Y.S.2d 220 (3d Dep't 2002). In a presently pending appeal of the Martin Act preclusion issue to the New York Court of Appeals, the Attorney General of the State of New York has submitted an *amicus* brief arguing against preclusion and showing how the same federal court decisions that defendants cite in this case misconstrue New York law.

26

(Ex. G to Van Der Tuin Decl. at pp. 12-25).  Indeed, a recent, comprehensive decision by Judge Victor Marrero of the district court for the Southern District of New York comes to the same conclusion.  *Anwar, et al., v Fairfield Greenwich Ltd., et al.* 728 F. Supp. 2d 354, 358 (S.D.N.Y. 2010) ("In short, while a significant body of judicial opinion finding a pre-emptive reading of the Martin Act exists, better reasoned and more persuasive authorities reject that view.")

The Board's negligence and negligent misrepresentation claims are not precluded by the Martin Act.

**D.    The Board Has Properly Pleaded Causes Of Action For Negligence And Negligent Misrepresentation**

> *1.  The Amended Complaint States A Cause of Action for Negligent*
> *Misrepresentation Against The Sponsor Defendants And The Corcoran Group*

The Sponsor Defendants and The Corcoran Group posit that the Amended Complaint fails to articulate a special relationship between the Purchasers and the Sponsor Defendants and The Corcoran Group to support a negligent misrepresentation claim.  They are incorrect.

The elements for a claim of negligent misrepresentation are that (i) defendant had a duty, as a result of a special relationship, to give correct information; (ii) the defendant made a false representation that he or she should have known was incorrect; (iii) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (iv) the plaintiff intended to rely and act upon it and (iv) the plaintiff reasonably relied upon it to his or her detriment.  *Hydro Inv., Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8 (2d Cir. 2000).  The special relationship arises where there is either privity of contract between the parties or a relationship so close as to approach that of privity.  *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 425, 541 N.Y.S.2d 335, *citing Credit Alliance Corp. v. Andersen & Co.*, 65 N.Y.2d 536, 551, 493 N.Y.2d 435 (1985).

27

As conceded by the Sponsor, there is privity of contract between Purchasers and the Sponsor under the Purchase Agreements. *See, e.g.,* pp. 15-16 of Sponsor Defendants' Memorandum of Law; Am. Compl. ¶¶ 26, 76-79. As discussed in Point IV(B1), the Member and Principal Defendants' contractual privity with the unit owners arises out of the Certification that Member and Principal Defendants signed.

Even if their Certifications did not create contractual privity, the unit owners, the Sponsor Defendants and The Corcoran Group have a "relationship so close as to approach that of privity" to satisfy a negligent misrepresentation claim. In order to establish a relationship so close as to approach that of privity, a plaintiff must allege (1) awareness that information provided would be used for a particular purpose; (2) reliance by a known party or parties in furtherance of that purpose; (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance. *Ossining,* 73 N.Y.2d at 425. It is important to consider "whether the particular transaction carries with it the potential for reliance by an indeterminate or indefinite number of third parties." *Marke Gardens,* 872 N.Y.S.2d at 689. Thus, "where the potential plaintiff or class of plaintiffs is fixed, definite and identifiable," courts are willing to impose liability upon a defendant. *Id.*

Developers of real estate property and real estate sales agents like the defendants may be held liable to purchasers for negligent misrepresentation. *See, e.g., Hansen v. Burton,* No. 101440/2006, 2006 WL 3837213 (N.Y. Sup. Richmond Co. Dec. 21, 2006) (denying developer's motion to dismiss negligent misrepresentation claims when each of the elements of the claim was sufficiently alleged); *Houlihan/Lawrence, Inc. v. Duval,* 228 A.D.2d 560, 644 N.Y.S.2d 553 (2d Dep't 1996) (a special relationship existed between purchaser and real estate broker where it was

28

alleged that purchaser's reliance upon the broker's misrepresentations concerning the design of the property could be anticipated).

Like *Hansen* and *Houlihan*, the Amended Complaint alleges each prong of a negligent misrepresentation claim. As to the Sponsor Defendants, the Board alleges that a special relationship arose of out of (i) the unit owners' contracts with the Sponsor Defendants and (ii) because they owed a duty of good faith and fair dealing to unit owners due to their position as developers and offerors of the Condominium and their superior knowledge of real estate transactions, condominium law and regulations and the construction of the Condominium. (Am. Compl. at ¶¶ 26, 31-34, 110-111). It is alleged that the Sponsor Defendants prepared and used the Offering Plan, marketing materials and sales brochures and signed the Certification to market and describe the characteristics, construction and design for the Condominium and Units. (Am. Compl. at ¶¶ 17-18, 22-23, 27-34). It is alleged that the Sponsor Defendants knew or should have known that the design, materials and construction of the Condominium differed materially from the representations in the offering materials, and they knew or should have known about the construction and design defects. (Am. Compl. at ¶¶ 112, 113). It is further alleged that the unit owners relied on the information given to them by the defendants in signing their Purchase Agreements, closing on their units and paying the purchase prices. (Am. Compl. at ¶ 115). Because the number of purchasers here is fixed, definite and identifiable—25 unit owners—there is no concern for indeterminate liability. *Marke Gardens, supra.*

As to The Corcoran Group, the Board alleges that a special relationship arose of out of The Corcoran Group's position as exclusive selling agent for the Sponsor with superior knowledge regarding the design and characteristics of the Condominium and because of this, they owed the unit owners a duty of good faith and fair dealing. (Am. Compl. at ¶¶ 19, 112). It

29

is alleged that The Corcoran Group marketed and sold the Condominium and Units and used the Offering Plan, marketing materials and sales brochures to make representations concerning the characteristics, construction and design for the Condominium and Units. (Am. Compl. at ¶¶ 19, 21). It is alleged that The Corcoran Group knew or should have known that the design, materials and construction of the Condominium differed materially from their representations, and they knew or should have known about the construction and design defects. (Am. Compl. at ¶¶ 112, 113). It is further alleged that the unit owners relied on the information given to them by The Corcoran Group in signing their Purchase Agreements, closing on their units and paying the purchase prices. (Am. Compl. at ¶ 115).

The defendants' reliance on *Bd. of Mgrs. of 374 Manhattan Ave. Condo. v. Harlem Infil LLC*, Index No. 105826/08, 2010 N.Y. Misc. LEXIS 2211 (Sup. Ct. N.Y. Cty. Jun. 18, 2010) is misguided. The Court dismissed those claims because the complaint there (unlike the Amended Complaint here) failed to sufficiently articulate the nature of the alleged relationship between the unit owners and the sponsor. The Court also erroneously found that the claims were precluded by the Martin Act even though, as discussed in Point IV(D) above, appellate courts have ruled that the Martin Act has no application to claims based upon affirmative mistatements. *Bd. of Mgrs. of Acorn Ponds at North Hills Condo. I v. Long Pond Investors*, 233 A.D.2d 472, 650 N.Y.S.2d 987 (2d Dep't 1996) is inapposite because that case addressed a breach of fiduciary claim and not a negligent misrepresentation claim.

Moreover, The Corcoran Group exaggerates an alleged *caveat emptor* doctrine that it argues exonerates it from liability for the statements that were made by its sales force. New York abandoned strict *caveat emptor* many years ago. *See De Roche v. Dame*, 75 A.D.3d 384, 430 N.Y.S.2d 390 (3d Dep't 1980) (courts have relaxed the doctrine of *caveat emptor* because

30

the purchaser is not in an equal bargaining position with the builder-vendor of a dwelling); *Ricciardi v. Frank*, 163 Misc.2d 337, 620 N.Y.S.2d 918 (City Ct.Westchester Co. 1994) (*caveat emptor* no longer applies to real estate transactions). Moreover, the cases above demonstrate that sponsors and sales agents can be held liable for misrepresentations they make to purchasers concerning real estate transactions.

The motion to dismiss the Fourth Claim must be denied.

   *2. The Amended Complaint States A Cause of Action for Negligence Against The Sponsor Defendants*

The Board's negligence claim against the Sponsor Defendants must also survive. The elements for a claim of negligent are (i) the existence of a duty; (ii) breach of that duty; (iii) injury to the plaintiff resulting therefrom and (iv) damages. *Benjamin v. City of New York*, 99 A.D.2d 995 (1st Dep't 1984). Negligence claims brought by condominium purchasers have been sustained against sponsor developers on a motion to dismiss where the duty of care arises out of a relationship so close as to approach that of privity. *See Bd. of Mgrs. of Astor Terrace, supra* (in reinstating action in negligence, Court found that recovery in negligence is available for losses resulting from allegations of defective conditions in the construction of a condominium).

The Amended Complaint properly pleads each of these prongs. It is alleged that the Sponsor Defendants owe a duty of care to purchasers (Am. Compl. at ¶ 128). This duty arises out of a special relationship by (i) the unit owners' contracts with the Sponsor Defendants and (ii) because they owed a duty of good faith and fair dealing to unit owners due to their position as developers and offerors of the Condominium and their superior knowledge of real estate transactions, condominium law and regulations and the construction of the Condominium. (Am. Compl. at ¶¶ 26, 31-34, 110-111). It is alleged that they failed to exercise due care and were negligent in failing to appropriately supervise the manner of construction and design and

31

permitted the Condominium and Units to be constructed with design and construction defects (Am. Compl. at ¶ 129).

The cases cited by the Sponsor Defendants are distinguishable from the present case. Neither *In re Agape Litigation*, 681 F.Supp. 2d 353 (E.D.N.Y. 2010) (discussing relationship between investors and bank merchant) nor *Gonzalez v. Caballero*, 572 F. Supp. 2d 463 (S.D.N.Y. 2008) (discussing employee's claims against a motor carrier in personal injury action) are negligence claims by a condominium purchaser against sponsor developers.

The motion to dismiss the Fifth Claim must be denied.

*3. The Amended Complaint States Viable Causes Of Action For Negligent Misrepresentation And Negligence Against The Natoli Defendants*

Negligence and negligent misrepresentation claims against engineers and architects routinely survive dismissal "where there is actual privity of contract between the parties *or a relationship* so close as to approach that of privity." *See, e.g., Astor Terrace*; *Bridge Street*; *Alfred Condominium*; *Marke Gardens, supra.* As established in Section IV(B2) above, there is privity of contract between the Board and the Natoli Defendants to satisfy these claims. In addition, the Board and purchasers have "a relationship so close as approaching that of privity," so that its negligent misrepresentation and negligence claims must be sustained.

It is alleged that the Natoli Defendants prepared the 41-page Specifications Report that described the building characteristics and construction specifications for the Condominium and Units that was included in the Offering Plan. (Am. Compl. at ¶¶ 28-30). It is alleged that the Natoli Defendants signed a Certification that stated that the Specification Report *inter alia*, set forth the physical condition of the Condominium and Units as they "will exist upon completion of construction;" did not "omit any material fact...or...contain any untrue statement of a material fact;" did "not contain any fraud, deception, concealment or suppression." (Am. Compl. at ¶¶

32

37-38, 152-153). It is alleged that the Natoli Defendants knew that the Specifications Report and Certification were inaccurate and the Natoli Defendants made misstatements and omissions of fact. (Am. Compl. at ¶¶ 171-172). It is further alleged that purchasers relied on the Certification and Specifications Report in signing their Purchase Agreements, closing on their Units and paying the purchase prices. (Am. Compl. at ¶ 173). Again, because the number of unit owners here is fixed, definite and identifiable, there is no concern for indeterminate liability.

The Amended Complaint also sufficiently alleges a negligence claim. It is alleged that the Natoli Defendants owe a duty of care to unit owners (Am. Compl. at ¶ 161), and they failed to exercise due care and were negligent in failing to appropriately supervise the manner of construction and design and failing to correct any inaccurate information in the Specifications Report and Certification (Am. Compl. at ¶ 162). New York courts recognize that design professionals owe a duty of care to purchasers. *See Bridge Street, supra, citing 17 Vista Fee Assoc. v. Teachers Ins. and Annuity Assoc. of America*, 259 A.D.2d 75, 693 N.Y.S.2d 554 (1st Dep't 1999) ("professionals...may be subject to tort liability for failure to exercise reasonable care"); *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 583 N.Y.S.2d 957 (1992) (refusing to dismiss condominium's negligence claim against engineer at an early stage of litigation).

The Natoli Defendants' motion to dismiss the Eighth and Ninth Claims must be denied.

### V. THE BOARD SHOULD BE ALLOWED TO AMEND ITS COMPLAINT A SECOND TIME

The Board believes its Amended Complaint properly pleads all its causes of action. However, if this Court disagrees and dismisses any claims, the Board should have the option of re-pleading.

Leave to amend a pleading "shall be freely given when justice so requires."   Rule 15(a).

Leave to amend may be denied only where the court finds "undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or]

futility of amendment." *Williams v. Brooklyn Union Gas Co.*, 819 F.Supp. 214, 223 (E.D.N.Y.

1993), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).   Moreover, leave to re-plead should

generally be permitted upon granting a motion to dismiss, unless it is clear that the plaintiff

cannot allege any facts sufficient to support its claims. *See Cortec Indus., Inc. v. Sum Holding

L.P.*, 949 F.2d 42 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).

## CONCLUSION

For all the above reasons, the defendants' motions to dismiss should in all respects be

denied.

Dated:  New York, New York          BALBER PICKARD MALDONADO
       March 23, 2011              & VAN DER TUIN, PC


By: _____
    John Van Der Tuin (JV-6625)


1370 Avenue of the Americas
New York, New York 10019
(212) 246-2400

*Attorneys for The Board of Managers of The Mason
Fisk Condominium, for itself and as statutory agent
of the Unit Owners of The Mason Fisk
Condominium*