```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
THE BOARD OF MANAGERS OF THE                                :
MASON FISK CONDOMINIUM, etc.,                               :    **MEMORANDUM**
                                                            :    **DECISION AND ORDER**
                         Plaintiff,                         :
                                                            :     (BMC) 10 Civ. 5782
             - against -                                    :
                                                            :
 72 BERRY STREET, LLC, et al.,                              :
                                                            :
                         Defendants.                        :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Before me is a motion to dismiss an action brought under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, et seq. ("ILSA"), for lack of standing and on other grounds. Because I find that plaintiff lacks standing and this Court is without jurisdiction, I do not reach defendants' other arguments.

## BACKGROUND

This litigation arose out of a sale of condominium units and the subsequent discovery of alleged structural defects in the building. The action is brought by the Residential Board of Managers of the Mason Fisk Condominium against several defendants under ILSA, and under state law claims over which the Board seeks to have the Court exercise supplemental jurisdiction. The sponsor defendants, 72 Berry Street, LLC., Meshberg Martin, LLC, 72 Berry Street Holdings LLC, Matthew Landau, Justin Meshberg, and David Martin, converted a factory building into 26 residential units. They sold 25 of the units pursuant to individual purchase agreements that incorporated an offering plan marketing the building as one that was "luxur[ious], sleek, and hip."

According to the offering plan, the sponsor would complete the construction of the units in compliance with the applicable building codes, using materials of substantially similar or better quality than those specified in the plan. When the purchasers started moving into their apartments, the complaint alleges, they began noticing design and construction defects. The Board retained an architect, who subsequently issued a report detailing the purported issues, including lack of fire protection within and between units, windows of inferior quality, lack of sound insulation between apartments, poor ventilation, and improper installation of heat pumps and wooden floors. Additionally, the complaint alleges that the sponsor failed to apply for a "J-51" real estate tax exemption despite promising to use "best efforts" to ensure that the building qualified.

The Board claims that the sponsor conceded its failure to comply with fire-safety codes, but denied responsibility for any of the other deficiencies. Eight months ago, the sponsor initiated state court litigation for reasons that are disputed by the parties. In its brief, the Board claims that it was commenced "the day after a 'standstill' agreement with the Board expired, seeking to blame the Board for its purported inability to access the building to perform fire-safety remediation." The sponsor claims that it felt compelled to seek court intervention when the Board blocked it from performing necessary repair work in one of the units.

The defendants move to dismiss the action for lack of jurisdiction or, alternatively, to stay it in favor of the parallel state court proceeding.

## **DISCUSSION**

ILSA was "designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma, 426 U.S. 776, 778 (1976).

Congress, "in passing the statute, desired to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing." Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1447 (11th Cir. 1985). "Existing laws, although able to deter and punish some abuses, were seen as deficient in critical respects." Bodansky v. Fifth on the Park Condo, LLC, 635 F.3d 75, 79 (2d Cir. 2011).

The Board brings this action under 15 U.S.C. §§ 1703 and 1709 of ILSA. Section 1703(a) requires developers and agents to issue to prospective purchasers property reports and prohibits any "untrue statement of a material fact" or any material omission in those reports. The enforcement provision of ILSA, § 1709, allows purchasers and lessees to institute an action for damages and injunctive relief. A "purchaser" is defined by ILSA as an "actual or prospective purchaser or lessee of any lot in a subdivision." 15 U.S.C. §1701(10).

Defendants move to dismiss the action for lack of standing. The complaint describes the Board – the only plaintiff in this action – as "the entity with the sole authority pursuant to [N.Y. Real Property Law § 339dd] to bring claims on behalf of itself and on behalf of individual Purchasers of Units relating to the Common Elements of the Condominium or issues affecting more than one unit." Defendants argue that that this state law provision is insufficient to grant the Board standing under ILSA.

"The core component of the requirement that a litigant have standing to invoke the authority of a federal court is an essential and unchanging part of the case-or-controversy requirement of Article III." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) (citation and internal quotation marks omitted). Standing requires a concrete and particularized injury that is either actual or imminent, one that is "traceable to the challenged action . . . and

3

redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2752 (2010). Although the standing inquiry often turns on the nature of the claim asserted, the focus is "on whether the plaintiff is the proper party to bring the suit." Raines v. Byrd, 521 U.S. 811, 818 (1997). "The aim is to determine 'whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" United States v. Vazquez, 145 F.3d 74, 81 (2d Cir. 1998) (quoting Warth v. Seldin, 422 U.S. 490, 498-99 (1975)).

"Because standing is challenged on the basis of the pleadings," the Court must accept as true all the material allegations in the complaint and construe it in favor of the Board. W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (internal quotation marks and citation omitted). In the complaint, the Board describes damages to individual unit owners but is silent on how the Board itself was injured. Under the ILSA cause of action, the Board seeks rescission, refunds, costs for "each purchaser for whom this action is brought," and injunctive relief and damages "for itself and for the purchasers." Presumably, because injury to the Board is not pled in the complaint, defendants have assumed in their motion that the Board cannot meet its injury-in-fact requirement of standing without invoking associational standing. See generally Sierra Club v. Morton, 405 U.S. 727, 739 (1972) (holding that an organization whose members are injured may represent those members even where the organization itself cannot show injury).

The Court in Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 343 (1977), held that an association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

4

requested requires the participation of individual members in the lawsuit." Defendants' challenge to the Board's associational standing is under the third prong only.

Because individual participation is almost invariably required for any claim seeking damages, courts have been reluctant to allow associational standing in cases that seek monetary relief. See Bano v. Union Carbide Corp., 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members"); Charles Alan Wright et al., 13A Federal Practice and Procedure 3d § 3531.9.5 (2011) ("Organization standing is particularly apt to be denied if damages are requested.").

Even where equitable relief is sought, the "organization lacks standing to assert claims of injunctive relief on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof." Bano, 361 F.3d at 714. "In contrast, where the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members, the Hunt test may be satisfied." Id.; see also Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc., 448 F.3d 138, 150 (2d Cir. 2006) (finding standing where a labor organization sought "civil penalties and injunctive relief only" for violations of environmental law). Thus, for example, a union had standing to challenge a Department of Labor policy directive because the suit did not seek recovery of the union members' benefits and therefore did not require the participation of the individual claimants. International Union, United Automobile, Aerospace & Agriculture Implement Workers of America v. Brock, 477 U.S. 274 (1986).

At the same time, the Supreme Court has held that the third element under Hunt is a prudential rather than a constitutional requirement. United Food & Commercial Workers Union

Local 751 v. Brown Group, Inc., 517 U.S. 544, 556-57 (1996) ("once an association has satisfied *Hunt's* first and second prongs assuring adversarial vigor in pursuing a claim for which Article III standing exists, it is difficult to see a constitutional necessity for anything more. . . . Hence the third prong of the associational standing test is best seen as focusing on . . . administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."). The corollary of that is two-fold: (1) Congress can override the requirement for any statute by establishing criteria for standing even where individual participation would seem necessary; and (2) the element can be "administered flexibly" and can therefore be met if the organization satisfies the Court's "functional concerns" regarding individual participation. Wright et al., 13A supra § 3531.9.5.

The Board cites to a state statute, but it cannot point to anything in ILSA that would obviate its burden to establish the third element under Hunt. Compare Warth v. Seldin, 422 U.S. 490, 509 (1975) ("[The] rule of judicial self-governance is subject to exceptions, the most prominent of which is that Congress may remove it by statute. Here, however, no statute expressly or by clear implication grants a right of action, and thus standing to seek relief, to persons in petitioners' position.") with Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005) ("Where . . . jurisdiction is predicated on *diversity of citizenship*, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action.") (emphasis added). Thus, the inquiry turns on individual participation.

Keeping in mind the flexibility of this element, particularly at the pleading stage, see, e.g., Pa. Psychiatric Soc'y. v. Green Spring Health Serv., Inc., 280 F.3d 278, 286–87 (3d Cir. 2002); Virginia Hosp. Ass'n v. Baliles, 868 F.2d 653, 663 (4th Cir. 1989), the Court must

determine the extent of the individual participation that this litigation would entail. Although *some* individual participation does not necessarily defeat associational standing, see, Warth, 422 U.S. at 511; Joseph S. v. Hogan, 561 F. Supp. 2d 280, 308 (E.D.N.Y. 2008), if most of the proof required to establish Board's claim is individualized, then associational standing cannot be sustained. See, e.g., JFK Health & Welfare Fund v. Analie Tours, Inc., No. 06-CV-2868, 2008 U.S. Dist. LEXIS 27685, at *11-12 (E.D.N.Y. Mar. 25, 2008).

Like in other actions for damages and injunctive relief based on personal injury, associational standing cannot be maintained here because proving the claims in the complaint would require the participation of each individual purchaser. The monetary relief sought in this case includes rescission of individual contracts and refunds, necessitating a showing of the price each purchaser paid. That alone might be sufficiently ministerial to allow the action to proceed, but there is much more. The monetary relief also includes various costs expended by the individual purchasers, including move-in costs, furnishing costs, and foreseeable expenses into improvements of each unit, as well as a pro rata amount lost by each purchaser for the sponsor's alleged delay in securing "J-51 Benefits." The requested injunctive relief features specific performance in the way of finished construction, which presumably includes construction of common areas as well as individual units.[1] Thus, it is apparent from the face of the complaint that the ILSA claim requires individual participation to determine liability and damages, requiring the Court to take into account, among other things, the costs reasonably incurred by each unit holder and the repair necessary in each apartment, which may differ based on, among

---

[1] As the Board's counsel conceded in oral argument, even if the form of injunctive relief pled in the complaint is common to all the units, there are differences in the level of the relief each unit owner may need: "Now, factually, it is true that particularly with respect to the fire stopping issues, the fire stopping deficiencies may be different from unit to unit, but they exist at all units." This again points to the need for individual participation.

other factors, the floor on which the unit is located. The individual participation required to make these findings is by no means *de minimis.*

Given the nature of the actions that are usually brought under the statute, this conclusion should not be surprising. Indeed, the two courts to consider associational standing under ILSA have dismissed the claims. Terre du Lac Association, Inc. v. Terre du Lac, Inc., 772 F.2d 467, 471 (8th Cir. 1985) ("First, in order to establish a right to relief, the Association would have to submit evidence relating to each purchase of a subdivision lot in order to establish that the purchaser had a viable Land Sales Act claim. Second, in order to establish the amount of relief due, the Association would have to submit evidence relating to the cost and current value of each lot, as well as evidence relating to the amount by which the defendants' Land Sales Act violations diminished this value. Clearly, the need for such individualized proof renders the Association an inappropriate vehicle to bring the Land Sales Act claims of its members."); Woodsmoke Ranch Ass'n v. Woodsmoke Resorts, Inc., No. 90-CV-6975, 1991 U.S. Dist. LEXIS 5689, at *11 (N.D. Ill. Apr. 30, 1991) ("proof of who was harmed and to what extent will be necessary if the court is called upon to determine the appropriate form and extent of the relief due.").[2]

Against the weight of this authority and what appears to be a clear need for individual participation, the Board relies on a state statute and "decisional law of New York," which, as noted above, is not relevant to this inquiry. See, e.g., Woodsmoke, 1991 U.S. Dist. LEXIS 5689, at *11 ("[T]he fact that a state law confers on an entity the power to participate in litigation does

---

[2] Associational standing in this context also raises questions of *res judicata*. See 13A Wright et al., supra, § 3531.9.5 ("A defendant who has been sued on [the theory of associational representation] can reasonably argue that it should be protected against subsequent litigation" instituted by association members.) In this case, counsel for the Board conceded that not all of the members (25 in total) may be in favor of this action: "I'm not going to tell you there won't be five dissidents who say we want nothing to do with litigation." Without the clear opt-out mechanism of a class action, the *res judicata* consequences of the association members are also of some concern.

not mean that such entity automatically has standing to sue under federal statute. State laws cannot expand or limit the scope of federal jurisdiction."). The Board's argument that the alleged deficiencies affect the "common elements" of multiple units – the question under state law according to the Board – is therefore of no moment here; similarity or some overlap in damages does not obviate the need for individual participation to establish what are, essentially, individual claims. Associational standing cannot be maintained.[3]

While the Board's reliance on the state statute language is misplaced, its discussion of the contractual obligation of the Board to bring lawsuits on behalf of individual purchasers does raise the question of whether the Board has assignee standing. See generally Connecticut v. Physicians Health Servs. of Conn., Inc., 287 F.3d 110, 117 (2d Cir. 2002) ("[A] valid and binding assignment of a claim (or a portion thereof) . . . may confer standing on the assignee."); see also Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 285 (2008) (assignees have standing even if they have agreed to remit all the recovery to the assignor).[4] The contract here states in relevant part that only the Board shall have the "right to enforce the obligations of Sponsor set forth in this section [which lists Sponsor's obligations]."[5]

---

[3] At oral argument counsel admitted that the "common elements" means not only common areas in the condominium, but also deficiencies that affect more than one unit. While this may allow the Board to bring an action under the state statute, that a claim is common to more than one purchaser (but not all purchasers), does not meet the third element of Hunt.

[4] In its post-argument submissions, the Board also suggests, in passing, that it has standing by statutory assignment. Of course if § 339dd had the expansive reach advocated by counsel – not only allowing, but requiring all actions, federal and state, stemming from defects affecting more than one condominium unit to be initiated by the Board rather than individual purchasers – it would be preempted by ILSA, which allows "actual" purchasers to bring suit.

[5] This paragraph in full provides that:

> Only the Board of Managers acting on behalf of the Unit Owners shall have the right to enforce the obligations of Sponsor set forth in this section. Notwithstanding the foregoing, individual Unit Owners shall have the right to enforce Sponsor's obligations only if either ( i ) the Board of Managers fails to take reasonable action to enforce such obligations within 90 days following the giving of notice of such claims by a Unit Owner to the Board of Managers or ( ii ) the applicable statute of limitations with respect to any claim by a Unit Owner which

Relying on Gibbes v. Rose Hill Plantation Development Co., 794 F. Supp. 1327, 1334 (D.S.C. 1992), defendants respond that ILSA does not recognize an assignee's claim. In Gibbes, the court found plaintiff to lack standing because he purchased his property from an individual rather than from a developer. The Court observed that "[t]here is no indication that Congress intended to extend this private cause of action to third parties who did not purchase property from a developer or agent." Id. at 1334 n.13.

I disagree with the premise that an assignment of a claim fails where a statute does not specify permissible assignees. Such a requirement would eviscerate the doctrine of assignee standing that is well-established in the Second Circuit, see Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91 (2d Cir. 2007) ("The assignment of a claim from a person who suffered an injury to someone who did not does not make the claim any less a 'case or controversy' which the courts have the constitutional capacity to resolve."), and has recently been reaffirmed by the Supreme Court. See Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 275 (2008) ("Assignees of a claim, including assignees for collection, have long been permitted to bring suit."). Nothing in ILSA prevents the assignment.

I must therefore determine whether the individual purchase agreements assigned purchasers' claims under ILSA to the Board. As Cordes and Sprint indicate, an assignment presumes the existence of claims and rights that can be subsequently transferred to a third party. Sprint, 554 U.S. 269 (payphone operators assigning their claims against long-distance carriers); Cordes, 502 F.3d 91 (bankruptcy estate's interest in an antitrust litigation sold in an auction); see also 9 Joseph M. Perillo ed., Corbin on Contracts § 47.3 (Matthew Bender) ("The assignee has a legal right if the assignor had one"). Here, however, the individual purchasers had no rights to

---

would otherwise be enforceable by the Board of Managers will expire during such ninety (90) day period.

10

give away. They acquired their condominium units with a panoply of rights and privileges, but nowhere were they ever granted the right to enforce plan obligations. To the contrary, the plan is unambiguous that only the Board can enforce the sponsor's obligations.[6]

Ultimately, the Board's argument is based on the assumption that since parties to a contract usually have the right to enforce it, the individual purchasers must have had that right too, and therefore must have assigned it away. But the assumption is wrong. If the express terms of the contract preclude enforcement on certain terms, then that is a term of the contract no different than any other term. The common law may imply a right to enforce if the contract is silent, but where the contract expressly disclaims a right to enforce it in favor of some other remedy, then the contracting party never had such a right of enforcement. This concept of a non-recourse contract is well known in the law. Cf. Travelers Ins. Co. v. 633 Third Avenue Associates, No. 91 civ. 5735, 1991 WL 236842 (S.D.N.Y. Oct. 31, 1991) (creditor lacked standing under fraudulent conveyance law because the terms of its contract were non-recourse against the debtor).

Moreover, even if the purchasing agreements transferred unit owners' rights, the question would become, rights to what? The contract refers only to the enforcement of "obligations . . . set forth in this section." As a practical matter, a successful ILSA claim may begin and end with a breach of a contract, but ILSA is not a federalized mechanism for enforcing contracts; it is a reporting statute that remedies fraud. See Bodansky, 635 F.3d at 80; see also Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Oklahoma, 426 U.S. 776, 778 (1976) ("[ILSA] is based on the full disclosure provisions and philosophy of the Securities Act of 1933, which it resembles in many

---

[6] A different way of interpreting the contract – offered by the Board at oral argument – is a distribution of rights: "certain rights were granted to the individual unit owners. And the rights that were granted to the Board were the rights to bring claims against the sponsor. . . ." Either way, individual purchasers did not transfer their own rights to the Board.

11

respects."). The rather narrow contractual language used here is insufficient to transfer claims of fraud in New York. Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 373 (S.D.N.Y. 2007) ("[W]hile causes of action are freely assignable in New York, the New York courts have held that in the absence of an *explicit* assignment of a cause of action based on fraud, only the assignor may rescind or sue for damages for fraud and deceit because where the representations were made to the assignor, he or she alone had the right to rely upon them.") (internal citations and quotation marks omitted, emphasis added); see also Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995) (reversing district court's conclusion that the contract did not transfer rescission and fraud claims as the contract sought to transfer "all . . . rights, title and interest," but suggesting that the reference to the contract alone would have been insufficient under New York law that requires relinquishment of any fraudulent misrepresentation claims to be explicit). The purchase agreements did not assign any rights, and if they did, they did not transfer fraud claims under ILSA.

Although not pled in the complaint or advanced as a theory for standing in its opposition brief, the Board claimed through counsel at oral argument that it sustained injury to itself, separate from the individual purchasers. Arguments raised for the first time at oral argument are generally deemed waived. See Tamar v. Mind C.T.I., LTD., 723 F. Supp. 2d 546, 555 (S.D.N.Y. 2010). In any event, the argument is without merit.

Counsel argued that it is the Board that would have to pay to fix the defects in the building, and, if the Board fails to pay, the municipal authority would issue violations against the Board, not the unit owners. As defendants point out, however, the Board would not suffer a constitutionally cognizable injury because the fine would be assessed through the individual

12

purchasers. Cf. Construction Industry Asso. v. Petaluma, 522 F.2d 897, 903 (9th Cir. 1975) (association satisfied injury-in-fact requirement where it alleged economic injury to itself through reduced contributions). Standing would in effect be borrowed from the individual purchasers, and that is just the purpose of associational standing, which the Board has failed to establish. See Wright et al., 13A supra § 3531.9.5.

Without standing, the Board cannot show that there is a case or controversy which this Court can adjudicate under ILSA. See Huff Asset, 549 F.3d at 106-07. The Board nonetheless seeks to have the Court maintain its jurisdiction over the action so that the Board could substitute the individual unit owners as plaintiffs. Of course, the "longstanding and clear rule is that if jurisdiction is lacking at the commencement of a suit, it cannot be aided by intervention of a plaintiff with a sufficient claim." Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co., 700 F.2d 889, 894 (2d Cir. 1983) (citation and quotation marks omitted); see also West Hartford v. Operation Rescue, 915 F.2d 92, 95 (2d Cir. 1990) ("[A]n intervening claim cannot confer subject matter jurisdiction over the action it seeks to join.").

The Board attempts to avoid dismissal of the claim by relying on Rule 17(a)(3) of the Federal Rules of Civil Procedure, which provides that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

This argument fails because Rule 17 cannot expand the Court's jurisdiction. See Zurich Ins. Co. v. Logitrans, Inc., 297 F.3d 528, 532 (6th Cir. 2002) ("[Rule 17(a)] must be read with the limitation that a federal district court must, at a minimum arguably have subject matter jurisdiction over the original claims."); see also Lincoln Prop. Co. v. Roche, 546 U.S. 81, 90

(2005) (Rule 17(a) addresses "party joinder, not federal-court subject-matter jurisdiction); 28 U.S.C. § 2072(b); Fed. R. Civ. P. 82 ("[The Federal Rules of Civil Procedure] shall not be construed to extend or limit the jurisdiction of the United States district courts . . . .").

Even if the Rule could retroactively cure the jurisdictional deficiency, the Board has failed to show the injustice or excusable mistake that courts have required before applying Rule 17(a)(3). See Wright et al., 6A supra § 1555 ("[T]he rule should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice. Thus, it has been held that when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed."); see also Fed. R. Civ. P. 15 Advisory Committee Notes (1966) (Rule 17(a) is designed "to avoid forfeitures of just claims").

Here, the substitution of the individual purchasers would not be a mere formality, see Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997); counsel for the Board conceded that he cannot be certain how many of the purchasers would join the action and the extent of relief that each would seek. As I noted at oral argument, it may be that after learning about their discovery obligations and exposure to costs, a substantial number of the owners may not pursue their claims. An action brought by the purchasers may therefore look quite different from the instant litigation; the allegations may be less sweeping and, like the relief sought, they would be more specific than what is now pled in the amended complaint. Nor has the Board shown the injustice of a dismissal. The individual purchasers are free to institute their own federal action or to interpose their claims in the currently pending state litigation.[7] The ILSA claim is therefore dismissed.

---

[7] At the time of the oral argument, the Court was advised that all the individual purchasers had been named and service had been attempted in order to join them in the state litigation. Interestingly (for purposes of predicting how

Where all federal claims are dismissed prior to trial, the Court has discretion to retain the state law claims or dismiss them without prejudice. 28 U.S.C. § 1367(c)(3). The usual result is that the state law claims should be dismissed absent some compelling efficiency or federal interest. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Here, the parties are fully able to pursue any remaining, viable state law claims in the current state court litigation as any discovery taken here can readily be used in that proceeding. There is no reason to deviate from the general rule, and I therefore dismiss the state law claims without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' Motions to Dismiss are granted and the action is dismissed.

**SO ORDERED.**

Dated: Brooklyn, NY
June 26, 2011

Signed electronically/Brian M. Cogan
_____
U.S.D.J.

---

many individual purchasers would bring an ILSA action), it is unclear whether counsel for the Board has been retained by any of the purchasers as he represented to the Court that he is not authorized to accept service on their behalf.